## State of Vermont v. Robert L. Percy

[548 A.2d 408]

No. 83-179

Present: **Allen, C.J., Dooley, J., and Barney, C.J. (Ret.), Keyser, J. (Ret.) and Costello, D.J. (Ret.), Specially Assigned**

Opinion Filed January 22, 1988

Motion for Reargument Denied April 29, 1988

*Jeffrey L. Amestoy,* Attorney General, *Susan R. Harritt,* Assistant Attorney General, and *Jane Gomez,* Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*David W. Curtis,* Defender General, and *Henry Hinton,* Appellate Defender, Montpelier, for Defendant-Appellant.

**Dooley, J.** The defendant in this case was found guilty of sexual assault, kidnapping, carrying a dangerous weapon while committing a felony and assault and robbery with a dangerous weapon. The convictions followed a lengthy trial by court.

The convictions arose out of a two-day incident in which defendant, a garage station attendant, forced a female customer at gunpoint to drive him to Connecticut. Along the way, he forced her to have sexual intercourse with him on two occasions — once

in Vermont — and robbed her of $130 in cash. Under the State's theory of the case, defendant was fleeing from another criminal prosecution for sexual assault.

The victim escaped from the vehicle in Connecticut and ran to a police car that was parked nearby. A manhunt ensued and defendant was apprehended shortly thereafter attempting to evade arrest.

The defense did not challenge the victim's statement of the events. Instead, the defendant relied on the insanity defense and argued that the State failed to prove sanity beyond a reasonable doubt once it was put in issue by the defendant and his experts. The defendant claimed to be suffering from post-traumatic stress disorder because of the continued effect of experiences in the Vietnam war. Defense experts maintained that defendant was experiencing an "unconscious flashback" at the time of the incident and because of it he could not control his mental and emotional processes and his behavior. They also believed that defendant had amnesia about the events starting with his abduction of the victim and ending with his arrest.

The sanity issue was hotly contested — it was really the only issue in the case. The defense put on four experts in support of its claim of insanity. The prosecution put on two experts in support of its position that defendant was sane at the time of the offense. All agreed that the defendant was suffering from post-traumatic stress disorder. However, they disagreed fundamentally about the relationship between the disorder and the conduct for which defendant was charged. They also disagreed on whether defendant actually suffered from amnesia.

After the close of the evidence the trial court issued a fifty-five page decision including findings of fact and conclusions of law and an entry order. The findings were subsequently amended in one area relevant to this appeal. The defendant appealed from the judgment raising five issues for this Court:

1. The trial court improperly used defendant's post-arrest silence to determine his sanity.
2. Defendant's due process rights and his right to confront witnesses and present a defense were denied by the failure to grant certain discovery requests.
3. The judgment rests on findings that cannot support the decision.

4. The warrantless search of defendant's wallet after his arrest, and the use of the fruits of that search as evidence, denied defendant's rights under the Vermont Constitution.
5. The trial court admitted and used improper character evidence of the defendant.

We treat these in the order they are presented.

## I.

The prosecution offered, through the testimony of the arresting officers in Connecticut, evidence of defendant's post-arrest conduct to show it was inconsistent with his claim of insanity or amnesia. Over objection, the officers testified that the defendant asked no questions about the charges or, in fact, about anything. In the closing argument, the prosecutors argued that the court should infer from defendant's silence that he was lying about his amnesia. The nucleus of their argument was:

> He is told he is under arrest for kidnapping and he doesn't ask what it is he supposedly kidnapped. He doesn't even ask where he is, how he got there, or what day it is, reasonable questions a person would normally ask upon resurfacing from a memory loss covering parts of two days. The reason he did not ask any questions was because he already knew the answers.

The prosecution requested findings on this point. The trial court made findings to the effect that the defendant said nothing and asked no questions when he was arrested, when he was in the police car after receiving *Miranda* warnings and at the police station. The defense objected to these findings and requested that they be struck.

The court amended the findings noting, however, that they did not go to guilt but were "considered only in light of defendant's claimed amnesia regarding the events which triggered his pursuit and arrest." The amended findings stated that "at no time during these events did Defendant ask any questions as to why he was being pursued and arrested." The events referred to included the chase, the arrest, a search, the reading of *Miranda* warnings and the transport to police headquarters.

After reviewing all the evidence, the trial court rendered conclusions on the psychiatric issues. No mention was made of defendant's silence. Instead, the court related testimony that defendant acted normal with "no evidence of confusion or unusual behavior."

In *Doyle* v. *Ohio*, 426 U.S. 610, 617 (1976), the United States Supreme Court held that it was impermissible for the prosecution to use post-arrest silence to impeach the credibility of a defendant who testified where the silence occurred after *Miranda* warnings were given. Because silence could be the exercise of rights under *Miranda*, the post-arrest silence is "insolubly ambiguous" and thus cannot be used to show that the defendant had no exculpatory story to tell the police. *Id.* Further, the Court held that the *Miranda* warnings imply that there will be no penalty for exercise of the rights covered in the warning including the right to remain silent. *Id.* at 618. If the prosecution is allowed to use silence to undermine a defense, the defendant will be penalized for the silence.

In *Wainwright* v. *Greenfield*, 474 U.S. 284 (1986), decided after the trial in this case, the Court applied *Doyle* to an instance where the prosecutor argued that post-arrest silence was inconsistent with a claim of insanity because it showed a comprehension of the warnings and the wisdom of exercising the right to remain silent. The Court found that the argument violated the defendant's right to remain silent as enunciated in *Doyle* even though the use didn't go to proof of the commission of the underlying offense. As in *Doyle*, the Court found that use of silence in this way penalized the defendant for the exercise of a constitutional right. The Court did note, however, that "carefully framed questions" that showed the rationality of defendant's conduct without comment on silence could be used. *Id.* at 295.

The use of defendant's silence in this case is similar to the use in *Greenfield*. Here, the court indicated that the silence was considered "in light of defendant's claimed amnesia" which was related to his post-traumatic stress disorder. Nevertheless, the State argues a number of ways to distinguish *Greenfield* in order to avoid reversal.

First, the State argues that the testimony described defendant's conduct, not silence. It is hard to see how this is a meaningful distinction. The defendant's failure to ask questions or make an exculpatory statement is silence. Whether the silence should be

classified as behavior or "testimonial" is irrelevant to the holding of *Greenfield*. Nor are the questions here the "carefully framed questions" described in *Greenfield*. Such questions would have been phrased to elicit responses that showed defendant acted in a rational manner without specifying silence as the indicator of rationality. See *State* v. *Mauro*, 149 Ariz. 24, 32, 716 P.2d 393, 401 (1986), *rev'd on other grounds*, 481 U.S. 520, 107 S. Ct. 1931 (1987).

Second, the State argues that the evidence was admitted without objection. A careful review of the record, however, indicates that while testimony about defendant's post-arrest silence was introduced at one point without objection, this testimony related to silence prior to defendant's receipt of *Miranda* warnings. Defendant's failure to object to such evidence in no way constituted a waiver regarding the introduction or use of evidence as to post-arrest, post-*Miranda* silence. In fact, as demonstrated by the record, at the first point in the trial where it was clear that the State was attempting to introduce testimony about defendant's post-*Miranda* silence defense counsel timely and forcefully objected. Thus defendant, having raised an appropriate objection to the State's attempt to elicit testimony about post-*Miranda* silence, was in a proper position to object to the trial court's finding based on such evidence, and may continue such objection on appeal.

Third, the State argues that part of the evidence related to silence that preceded *Miranda* warnings so that the post-warnings silence was cumulative. The United States Supreme Court has held that silence that precedes an arrest or follows an arrest but precedes *Miranda* warnings is not covered by *Doyle* and can be subject to comment. See *Fletcher* v. *Weir*, 455 U.S. 603, 606 (1982); *Jenkins* v. *Anderson*, 447 U.S. 231, 239 (1980). A number of state courts have refused to follow this holding, relying either on their state constitutions or their rules of evidence. See, e.g., *Nelson* v. *State*, 691 P.2d 1056 (Alaska Ct. App. 1984); *Lee* v. *State*, 422 So. 2d 928 (Fla. Dist. Ct. App. 1982); *State* v. *Lyle*, 73 N.J. 403, 375 A.2d 629 (1977); *Commonwealth* v. *Turner*, 449 Pa. 579, 454 A.2d 537 (1982); *Sanchez* v. *State*, 707 S.W.2d 575 (Tex. Crim. App. 1986); *State* v. *Davis*, 38 Wash. App. 600, 686 P.2d 1143 (1984). In this case, the court admitted evidence on silence that occurred both before and after the giving of *Miranda* warnings with no distinction based on the timing. We have no basis to conclude that the trial court viewed the post-warning silence as

"cumulative" that added no weight to the evidence. Indeed, the failure of the court to strike the reference to post-arrest silence in response to the motion of the defendant suggests that the court found it important.

Finally, the State argues that the evidence and finding are "harmless error." The standard for determining whether error is harmless for violations of federal constitutional rights is set forth in *United States* v. *Hasting*, 461 U.S. 499, 507-09 (1983); see also *Chapman* v. *California*, 386 U.S. 18, 21-24 (1967) (harmless error must be proven beyond a reasonable doubt). The question we must ask is whether it is clear beyond a reasonable doubt that the trial court would have rendered a judgment of guilty absent the offending evidence. See *State* v. *Percy*, 146 Vt. 475, 485, 507 A.2d 955, 961 (1986); *State* v. *Hamlin*, 146 Vt. 97, 102, 105-06, 499 A.2d 45, 49, 51-52 (1985).

We find that there are considerations bearing on harmless error in this case in both directions. While the trial court made findings about defendant's silence, they are not specifically used in the court's conclusions. On the other hand, it is not entirely clear how the court reached its decision because most of the "findings" are actually recitations of the evidence that don't show the weight the court attached to them.

Defendant has raised as an independent ground for reversal that the court's findings are *Krupp* findings — that is, they are recitations of testimony rather than findings of fact. See *Krupp* v. *Krupp*, 126 Vt. 511, 514, 236 A.2d 653, 655 (1967). We need not reach that argument because we hold that the nature of the findings is fatal to the State's claim of harmless error.

The court's lengthy discussion of the psychiatric evidence is stated almost exclusively in terms of statements of the testimony. There are actually two sets of "findings" in the court's decision. The first set goes through the actions of the defendant and victim throughout the events that gave rise to the criminal charges. About half of these "findings" involve recitations of the psychiatric evidence usually stated in the form of "Dr. X testified that . . ." combined with statements about the qualifications of the expert witnesses. There is one key conclusion that reads in part:

Based upon the credible evidence presented, this Court is not persuaded that the Defendant suffers from psychogenic

> amnesia for the period [between his taking the victim by force and his arrest].

The second set of "findings" relates solely to the psychiatric evidence. Except for background matters, the "findings" in this part of the court's decision are recitations of what testimony was given by the key witnesses. One part recites the testimony of the police officers that the defendant was "quiet, calm and normal." Thereafter, the court states the conclusion that the State "has proved the defendant's sanity . . . beyond a reasonable doubt."

We cannot consider the recitations of testimony as findings. See *Krupp*, 126 Vt. at 514, 236 A.2d at 655. Once we exclude the recitations, the findings of the court are brief and conclusory and give us no basis to determine what facts the trial court relied upon in reaching its conclusion that the defendant was sane and did not suffer from psychogenic amnesia. Thus, we can not conclude beyond a reasonable doubt that the trial court would have rendered a judgment of guilty absent the consideration of the evidence of post-*Miranda* warning silence. Accordingly, we must reverse on this ground.

Shortly before the argument in this case, the United States Supreme Court decided *Greer* v. *Miller*, __ U.S. __, __, 107 S. Ct. 3102, 3108 (1987), which in effect found a *Doyle* violation to be harmless error. *Greer* is of no help to the State because the claim that the error was harmless is far stronger than in this case.[1] In *Greer*, the prosecutor asked the defendant on cross-examination why he didn't tell his story to anybody when he got arrested. Defense counsel objected before defendant could answer. The trial judge sustained the objection and instructed the jury to ignore the question. The matter was not pursued any further. The trial judge specifically instructed the jury to disregard questions to which objections were sustained. Defense counsel did not ask for any further action by the court.

The Supreme Court in *Greer* sustained a state court finding that the question was harmless error.[2] The Court emphasized that

---

[1] Even though the State's position in *Greer* was far stronger, the decision came from a divided Court (six to three) with one of the majority voting for the harmless error theory solely because the case came to the Supreme Court on a petition for a writ of habeas corpus rather than by direct appeal.

[2] Because the prosecutor's question was not answered, the Court analyzed the case as one involving a possible due process violation based on prosecutorial

the sequence of events — question followed by an immediate objection which was sustained with two curative instructions to the jury — showed no violation of defendant's rights. The Court also relied upon the state court's determination that the properly admitted evidence proved defendant's guilt beyond a reasonable doubt. *Id.* at ___, 107 S. Ct. at 3109-10.

In this case, unlike *Greer*, the improper questioning was answered, used by the prosecutor in the argument to the court, and was relied upon by the court in its findings. We cannot say beyond a reasonable doubt that the defendant would have been convicted without admission of the improper evidence. The gulf between this case and *Greer* is so wide that *Greer*, if anything, supports the defendant's argument in this case.

Our disposition of the first issue raised by defendant makes it unnecessary to reach the other issues briefed. However, two of the issues are likely to recur if there is a retrial.[3] Since they are carefully briefed here and our disposition will aid the trial court on remand, we choose to reach these issues.

## II.

Defendant's second claim of error is that his rights to due process, to confront witnesses and to present his defense were denied by the failure of the trial court to order that his psychological experts be allowed to interview the victim, and to order the State to disclose the names of any mental health professionals who had interviewed and treated the victim, to produce those persons for deposition and to produce all records prepared by or from such persons relevant to the crime alleged. Defendant requested both the interviews by the experts and the disclosure and production of mental health information about the victim by motion well

---

misconduct. Relying in part on the state court's harmless error analysis, it found no due process violation.

[3] We do not reach the issues involving the adequacy of the findings and the admissibility of defendant's wallet. The former issue has, in fact, been dealt with in part in our analysis of harmless error in relation to the use of post-arrest silence. On the latter issue, defendant argues a violation of the state constitution. We note that the defendant did not alert the trial court that he claimed that the Vermont Constitution set a different standard from the United States Constitution on this issue. He has abandoned any claim in this Court that introduction of the wallet violated the federal constitution. Thus, the circumstances are not present for us to reach this claim in any event. See *State v. Maguire*, 146 Vt. 49, 54, 498 A.2d 1028, 1031 (1985).

before trial. On the former request, defendant argued that the interviews were necessary to allow the experts to prepare for trial and that the State's experts had interviewed the victim to obtain her description of the defendant's conduct during the hours they were together. The trial court denied the motion because it was not convinced that the meeting was necessary to prepare the defense and because defendant could use formal discovery as well as cross-examination at trial to elicit needed information.

On the second request, defendant argued that the victim had disclosed she was receiving professional counseling in a deposition and that disclosure was necessary to "investigate the veracity and reliability" of the victim's statements as well as the "mental, emotional and psychological condition" of the victim. The trial court denied the motion because the defendant advanced no "compelling reasons for disclosure" that would outweigh the "serious invasion of the witness' privacy."

While defendant has framed the issues in terms of constitutional rights, it is instructive to look first at the defendant's rights under Vermont's criminal discovery rules. V.R.Cr.P. 16 requires the prosecution to make certain disclosures to the defendant including the following if within the "prosecuting attorney's possession, custody, or control": (1) reports or statements of experts, made in connection with the case, including results of physical or mental examinations; (2) documents which are "material to the preparation of the defense"; (3) "names and addresses of all witnesses whom the prosecuting attorney intends to call" at trial; and (4) any other material or information, not including work product — "necessary to the preparation of the defense." V.R.Cr.P. 16(a)(2)(C), (D), (E) and (G). Additionally, the defendant has the right to take the deposition of any "witness" including the victim. V.R.Cr.P. 15(a). The discovery rules prohibit the prosecutor from advising "persons having relevant material or information" to refrain from discussing the case or giving relevant material to the defense. V.R.Cr.P. 16.2.

Defendant finds these discovery rights insufficient in this case because the victim is not in the control of the prosecution and chooses not to help the defense in preparing a case. Further, the prosecutor does not have the names or reports to produce, and most, if not all, of the information is privileged. Thus, defendant argues that his rights to be confronted with witnesses against him under the Sixth Amendment to the United States

Constitution, to reciprocal discovery under the Fourteenth Amendment to the United States Constitution, and to call for evidence in his favor under Chapter I, Article 10 of the Vermont Constitution are violated by the denial of discovery. We take these claims in order.

On the first point, defendant relies on *Davis* v. *Alaska*, 415 U.S. 308 (1974), which holds that the Sixth Amendment requires that the defense have access to state juvenile records about a state witness, despite the fact they are privileged, in order to allow the defendant to conduct a cross-examination. In *Davis*, the defendant wanted to show at trial that the witness, whose credibility was central to the case against defendant, was on probation arising out of a juvenile delinquency adjudication that the witness committed a burglary. For purposes of this case, it is important to note that *Davis* does not deal with pretrial discovery rights.

The reach of *Davis* has been narrowed considerably by *Pennsylvania* v. *Ritchie*, 480 U.S. 39 (1987), where defendant was charged with sexual offenses involving a minor victim. In *Ritchie*, the defendant sought pretrial access to the records of the state agency which investigated cases of juvenile mistreatment and neglect. He sought records involving the acts for which he was being charged as well as records about an earlier abuse complaint. These records were confidential and privileged under Pennsylvania law.

The Court in *Ritchie* held that the Sixth Amendment right of confrontation as enunciated in *Davis* is a trial right that is not violated by restrictions on pretrial discovery. It rejected the argument that defendant needed the discovery to determine "which types of questions would best expose the weaknesses in [the victim's] testimony." *Id.* at 51. It explained that the error in *Davis* "was *not* that [the State] made this information confidential; it was that the defendant was denied the right 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' " *Id.* at 54 (quoting *Davis*, 415 U.S. at 318).

While the above analysis disposed of the *Davis* claim, the Court went on to hold that the due process clause of the Fourteenth Amendment creates disclosure rights relevant to defendant's

claims.[4] *Id.* at 56-62. The Court drew on the line of cases that hold that the prosecution "has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Id.* at 57; see *United States* v. *Agurs,* 427 U.S. 97, 106-07 (1976); *Brady* v. *Maryland,* 373 U.S. 83, 86-88 (1963). Assuming the defendant has a basis for the claim that the agency file contains material evidence, the Court held that the Fourteenth Amendment requires the trial court to make an in camera inspection of the file to determine whether there is any evidence "material" to the defense of the accused. *Ritchie,* 480 U.S. at 59. The Court refused, however, to accept the Pennsylvania Supreme Court's holding that defendant's counsel must also be allowed to go through the State's files to look for evidence material to his defense. In balancing the defendant's right to disclosure against the confidentiality policy behind the privilege for such records, it held that in camera inspection struck the best accommodation of the competing interests. It noted that the Fourteenth Amendment did not create a "constitutional right to conduct [a] search of the State's files to argue relevance." *Id.*

There are similarities between defendant's requests here and those in *Ritchie.* As in *Ritchie,* defendant has sought disclosure by the State of privileged information about the victim of a crime.[5] There are also very significant differences. The information sought to be discovered in this case is not in the possession of the State or any of its agencies. Defendant has made virtually no showing that the information sought includes material evidence — indeed, defendant essentially admitted the underlying acts. Defendant in this case made a broad request for all records rather than, as in *Ritchie,* trying to subpoena specific records. Fi-

---

[4] Defendant has not based his request for the names and reports of the victim's counselors on the due process clause independent of its use to apply the Sixth Amendment to the State. We will entertain the argument since it will clearly be raised on retrial in light of *Ritchie.*

[5] For purposes of this analysis, we assume that all information sought by the defendant is privileged pursuant to V.R.E. 503 and 12 V.S.A. § 1612 (patient's privilege). The defendant in his motion characterized the issue as the "psychiatrist/patient privilege versus the right of the defendant to effective cross-examination . . . ." Printed case, Vol. I, at 26. The State's response makes similar assertions. Printed Case, Vol. I, at 33-34. As to nonprivileged material, defendant has the alternative to obtain the needed disclosures through depositions and use of subpoenas. See V.R.Cr.P. 15, 17. In *Ritchie,* the defendant sought a subpoena.

nally, we find no exception to the privilege in the case allowing in camera inspection by the court — whereas, in *Ritchie*, the statute allowed disclosure to the court pursuant to its order.[6]

Any of these differences would severely undercut defendant's claims. In the aggregate, they are fatal. The pretrial discovery right set out in *Ritchie* applies solely to information in the hands of the State. While we do not preclude the possibility that a case will arise where due process will require some access to privileged information about the victim not held by the State, this is clearly not such a case.[7] The purpose of the privilege is to encourage patients to be candid about information needed for medical or mental health diagnosis or treatment. Often that candor means disclosure of sensitive and embarrassing information. We are particularly solicitous of the need of a victim of a sexual assault to seek and receive mental health counseling without fear that her statements will end up in the public record in order to afford defendant as effective cross-examination as possible. We are unwilling to require the victim to forego counseling or risk disclosure absent the most compelling justification — none has been asserted here.

We also find the procedural method used by the defendant to be deficient. By its broad motion, defendant attempted to force the State to determine what information was relevant, acquire the information from the victim and turn it over to the defense. If the defense has a legitimate need for information necessary to its case, it must first use its discovery powers to narrow the issue and develop a specific justification for acquiring the information. Ordinarily, this means use of depositions and subpoenas if neces-

---

[6] Presumably because of this difference, defendant made no request for an in camera inspection in this case under V.R.Cr.P. 16.2(f). In *Ritchie*, this alternative was available and was considered by each of the courts that decided the case.

[7] No request for the victim to submit to a psychiatric examination was made, and we do not rule on whether the court could have ordered such an exam in a criminal case. See *State v. Boisvert*, 119 N.H. 174, 400 A.2d 48 (1979). We have held that the district court did not have the power to order a psychiatric examination of a parent in a juvenile case. See *In re T.L.S.*, 139 Vt. 197, 425 A.2d 96 (1980). We note, however, that a court-ordered exam would probably involve a lesser intrusion on the victim's privacy since the use of the exam would have been apparent from the beginning. For this reason, no privilege would ordinarily cover such an exam. See V.R.E. 503(d)(2).

sary. See V.R.Cr.P. 15, 17. Then, the trial court can make an informed ruling that weighs the competing interests.[8]

Finally, we emphasize that defendant has made no showing that any of the information it sought would help its defense in any way. The defendant's stated reasons for the information could be given for every victim who seeks counseling about the crime and its effect on the victim's mental health.

■ Defendant's second claim of discovery error was that the failure to grant his motion to require the victim to submit to interviews by defense psychiatric experts violated his due process right to reciprocal discovery. At trial, defendant asserted that the State's expert psychiatric witnesses based their opinions, in part, on interviews with the victim. Thus, defendant, having himself been required to submit to interviews by the State's experts, argued that the court must order the victim to meet with defendant's experts to allow reciprocal discovery rights.

Defendant's claim is based entirely on *Wardius* v. *Oregon*, 412 U.S. 470 (1973), where the United States Supreme Court struck down an Oregon rule that required the defendant to give pretrial notice of the use of an alibi defense. At trial, defendant was denied the ability to present the alibi defense because he failed to give notice of it to the prosecution. Oregon did not allow criminal defendants any discovery against the government — for example, the State did not have to disclose the names of witnesses it would use to refute the alibi defense. Thus, unless defendant engaged in one-sided discovery designed to provide a unilateral benefit to the State, he was completely foreclosed from exercising a defense otherwise available to him.

The Court held that, absent reciprocal discovery rights, the Oregon alibi rule was violative of the due process clause of the Fourteenth Amendment. *Id.* at 478-79. And, the Court stressed that "discovery must be a two-way street." *Id.* at 475. It should be noted that while *Wardius* arose in the discovery context, its focus really was on the offensiveness of the State assuming an unfair advantage over a defendant to the end that the adversarial sys-

---

[8] This method was used in *Ritchie*, 480 U.S. at 57-60. It is also described in detail in *State* v. *Esposito*, 192 Conn. 166, 471 A.2d 949 (1984), a case very similar to this one. We approve of the procedure outlined in *Esposito* although we find the threshold stated in *Esposito* to trigger the right to access to the privileged information to be too low. *Esposito* appears to rely on a reading of *Davis* v. *Alaska* that has been rejected in *Ritchie*.

tem would be undermined and the balance of powers between the prosecution and the defendant would become overwhelmingly skewed in favor of the State. See *United States* v. *Reckmeyer*, 631 F. Supp. 1191, 1197 (E.D. Va. 1986) (citing *Wardius*, 412 U.S. at 474), *aff'd*, 814 F.2d 905 (4th Cir. 1987). In fact, the *Wardius* Court observed that "[a]lthough the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded, it does speak to the balance of forces between the accused and his accuser." *Wardius*, 412 U.S. at 474 (citation omitted). Consistent with this notion, the Pennsylvania Superior Court, relying on *Wardius*, noted that "[c]learly, the purpose of the discovery rules is to insure a fair trial for both parties involved." *Commonwealth* v. *Stehley*, 350 Pa. Super. 311, 318, 504 A.2d 854, 857 (1986). The Pennsylvania court, in *Stehley*, noted that while the accused does not always have equal access to the same information as the prosecution, liberal discovery rules are aimed at redressing gross disparities that would hamper effective case preparation. *Id.*

Vermont's Criminal Rules have very liberal discovery provisions that are generally reciprocal. See *Mayer* v. *Moeykens*, 494 F.2d 855, 859 (2d Cir.), *cert. denied*, 417 U.S. 926 (1974); V.R.Cr.P. 15-17. Defendant does not claim otherwise. Instead, defendant claims that "reciprocity" in this case means that he has the same right to interview the victim as the State has to interview him. Thus, in his view, if the State can have expert witnesses-psychiatrists interview him then he can have expert witnesses-psychiatrists interview the victim.

Defendant offers no support for this novel view of reciprocity that equates the victim with the prosecution. Reciprocity here, to the extent it applies, gives defendant full access to the opinions of the State's witnesses, including expert witnesses, bearing on defendant's sanity. Through depositions and examination at trial, defendant has full access to the victim to obtain information that may help the defense experts form opinions on the defendant's sanity. *Wardius* requires no more.

Dealing with a *Wardius* claim, the United States Court of Appeals for the Seventh Circuit held that "the inability of a defendant to interview witnesses is a constitutional problem only if the state artificially restrict[s] the defendant's ability to obtain evidence." *United States ex rel. Jones* v. *DeRobertis*, 766 F.2d 270, 274 (7th Cir. 1985), *cert. denied*, 475 U.S. 1053 (1986). In *State* v.

*Heath*, 129 N.H. 102, 109, 523 A.2d 82, 87 (1986), the New Hampshire Supreme Court upheld a trial court's refusal to order that a juvenile victim, who was the complaining witness in a sexual assault case, submit to an interview and discovery deposition. The court stressed that the type of discovery sought was not the exclusive method by which the defendant could obtain information for the investigation and preparation of his criminal case. *Id.* at 109, 523 A.2d at 87. Specifically, the court noted that the "defendant ha[d] access, for example, to a statement by the victim that not only anticipate[d] the victim's testimony but provide[d] a basis to attack the reliability of that testimony . . . ." *Id.* Given the availability of alternative sources of information, the court was unable to conclude that the specific discovery sought was "necessarily essential to adequate trial preparation." *Id.*

Given the ample opportunities for the defendant, in the current case, to obtain information other than through court-ordered expert examination of the victim, we are unable to conclude that *Wardius* has been offended. The fact that the victim chose to permit an interview by the State's expert does not change this result. Moreover, we are unwilling to extend the *Wardius* discovery requirements as far as the defendant would have them reach based solely on his unsupported contention that such is the state of the law.

■ Defendant's last discovery argument is that the failure to order the victim to submit to questioning by the defendant's expert witnesses violates Chapter I, Article 10 of the Vermont Constitution — the right of the defendant to "call for evidence in his favor." Defendant didn't preserve this point below — the motion was based on the "right to equal protection of the laws and due process, secured by the Vermont Constitution and the Constitution of the United States" and on 12 V.S.A. § 1643. The situation here is very similar to that present in *State* v. *Maguire*, 146 Vt. at 54, 498 A.2d at 1031, where we refused to address a state constitutional claim. As in *Maguire*, defendant failed to discuss the state constitutional claim in any respect in the trial court and failed to brief it here beyond a bare assertion that the Vermont Constitution requires the relief he demands. In view of the remand, it is inappropriate for us to require rebriefing in this Court even if the issue is preserved. See *State* v. *Jewett*, 146 Vt. 221, 229, 500 A.2d 233, 238 (1985). Thus, we decline to address the

issue. If defendant expects a more thoughtful analysis of the claim on remand, he must do a better job of briefing the issue.

## III.

Defendant's third claim of error is that the trial court admitted improper character evidence when it allowed the State's psychiatrist to testify that defendant possessed an antisocial personality. Prior to trial defendant filed a motion in limine to exclude the State's experts from testifying to defendant's prior rape conviction and other criminal acts, whether or not they resulted in conviction. Defendant particularly objected to one psychiatrist's opinion that defendant had an "antisocial personality" based in part on criminal and antisocial acts in the past. The trial court denied the motion, allowing the State to attempt to introduce evidence of prior "bad acts" under V.R.E. 404(b) (evidence of other crimes or wrongs admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident),[9] as part of the evidence bearing on defendant's sanity, and as a basis for the psychiatrist's opinion. The State's psychiatrist testified that he diagnosed defendant as an antisocial personality and recited the defendant's testimony — including prior crimes and other wrongs — on which his opinion was based.[10]

At the outset, we emphasize that this Court has established a very broad rule of admissibility of evidence bearing on sanity:

> [T]he scope of relevant evidence as to sanity or insanity has to be allowed to be of whatever breadth is appropriate to fully expose the issue to the jury for their fair determination.

---

[9] The prosecution did agree not to use defendant's prior convictions.

[10] The State argues, with some cause, that the defense failed to preserve its objection. The defendant objected to the psychiatrist's testimony as "irrelevant," arguably the wrong ground. An objection on the wrong ground does not preserve an appeal issue on the right ground. See *State* v. *Bissonette*, 145 Vt. 381, 392, 488 A.2d 1231, 1237 (1985). We reach this issue because it is likely to arise again on remand, the defendant raised it clearly in his motion in limine, and the continuing objections of defense counsel to the whole line of questioning made defendant's point.

*State* v. *Smith*, 136 Vt. 520, 524, 396 A.2d 126, 128 (1978). As this Court stated in *State* v. *Warner*, 91 Vt. 391, 392, 101 A. 149, 150 (1917):

> When a respondent puts his mental condition in issue by the introduction of evidence tending to show his insanity, he opens an inquiry that may take a very wide range; how wide, depends upon the circumstances of the case in hand. Broadly speaking, his whole life may be canvassed for evidence bearing upon the question; and his ancestry and family history may be investigated.

(citation omitted).

While defendant recognizes this broad range of inquiry, he argues that it cannot include evidence of past crimes and wrongs because this evidence is actually being used "to prove the character of a person in order to show that he acted in conformity therewith" in violation of V.R.E. 404(b).

Defendant is correct that we have a prohibition on the use of evidence of other crimes and wrongs when the purpose of introduction is to show the defendant's predisposition to commit a similar crime or propensity to engage in criminal conduct. See generally Reporter's Notes, V.R.E. 404(b); *State* v. *Catsam*, 148 Vt. 366, 379-84, 534 A.2d 184, 193-96 (1987). The prohibition doesn't apply where the evidence offered is for a different purpose. See *State* v. *Catsam*, 148 Vt. at 380, 534 A.2d at 193. We believe its use here falls within such an exception in view of the broad range of permissible inquiry.

Once defendant puts his sanity in issue, it is incumbent on the State to examine and display defendant's actions before and during the criminal act to show whether he had a mental disease or defect and could appreciate the criminality of his conduct or conform his conduct to the requirements of the law. See 13 V.S.A. § 4801(a)(1). In reaching a conclusion on this question, our law requires the fact-finder to exclude "abnormality manifested only by repeated criminal or otherwise anti-social conduct." 13 V.S.A. § 4801(a)(2). As the State psychiatrist testified in this case, anti-social personality is a recognized diagnosis outlined in the widely used *Diagnostic and Statistical Manual of Mental Disorders* 317-21 (3d ed. 1980). The expert in this case used it as a diagnosis that was an alternative to the diagnosis of mental illness made by the defense experts. Because the evidence of prior criminal acts

and wrongs was "of a type reasonably relied upon by experts in the particular field in forming opinions," it could form at least part of the basis for the expert opinion on sanity. See V.R.E. 703. Thus, it is relevant on the question of sanity and is being used for a purpose other than that precluded by V.R.E. 404(b). This view is consistent with the authority from other jurisdictions. See *State* v. *Skaggs*, 120 Ariz. 467, 586 P.2d 1279 (1978); *People* v. *Martinez*, 86 Ill. App. 3d 486, 408 N.E.2d 358 (1980); *People* v. *Santarelli*, 49 N.Y.2d 241, 401 N.E.2d 199, 425 N.Y.S.2d 77 (1980); *State* v. *Larsen*, 44 Or. App. 643, 606 P.2d 1159 (1980); *State* v. *Goss*, 33 Or. App. 507, 577 P.2d 78 (1978).

■ There is a second related reason why the proffered evidence was admissible. The evidence of prior "bad acts" came in entirely through the testimony of the State psychiatrist and was part of the personal history, as related to the psychiatrist by the defendant, on which he based his opinion of defendant's sanity.[11] Thus, it was offered to show the basis of the opinion only and not to show defendant's criminal disposition. This is another generally recognized exception to the prohibition of V.R.E. 404(b). See, e.g., *State* v. *Wall*, 78 Or. App. 81, 86-87, 715 P.2d 96, 99 (1986). In *State* v. *Lapham*, 135 Vt. 393, 404, 377 A.2d 249, 255 (1977), this Court concluded that statements by a defendant to a psychiatrist, not prohibited because they show elements of the offense for which the defendant is charged, "are admissible to establish a basis for the psychiatrist's evaluation of sanity at the time of the offense."

We recognize that even if evidence of prior criminal acts is admissible for the reasons stated above, its limited probative value can be "substantially outweighed by the danger of unfair prejudice." V.R.E. 403. For example, the reasons for admission can be abused by a litany of criminal acts having little to do with mental capacity or expert opinion, see *People* v. *Robinson*, 417 Mich. 661, 664-66, 340 N.W.2d 631, 633 (1983), or where there is no showing "that the evidence bears some articulable relation to the issue." *People* v. *Santarelli*, 49 N.Y.2d at 250, 401 N.E.2d at 204, 425 N.Y.S.2d at 83. The trial judge must be careful to balance prejudice against probative value as the evidence comes in to

---

[11] The trial judge was careful in this case to limit the testimony solely to statements made to the expert by defendant. Thus, defendant has not raised an objection to the admissibility of the evidence apart from the strictures of V.R.E. 404(b).

ensure that the scale tips in the right direction. Although the defendant did not ask for such a weighing here, the case was tried by court and the trial judge demonstrated a sensitivity to the competing considerations in ruling on the motion in limine. We find no error on this point.

*Reversed and remanded.*

## On Motion for Reargument

The State's motion for reargument is denied, as it has failed to show any points of law or fact, presented in the briefs upon the original argument, that this Court has overlooked or misapprehended and which would probably affect the result. See V.R.A.P. 40. In particular, we are not persuaded by the State's argument that the trial court's findings with regard to defendant's post-*Miranda* silence were not relied on by the lower court or that such findings were merely superfluous. The trial court made specific findings based on improper testimony relying on post-*Miranda* silence, and when requested by defendant to excise the tainted findings, the court continued such use in its amended findings. Thus, the State's argument that the trial court neither relied on, nor needed to rely on, evidence of post-*Miranda* silence is not supported by the record, the briefs or the arguments before this Court.

The State's alternative motion for limited remand is also denied. It is up to the trial court in the first instance to determine the proper course of action on remand consistent with the opinion of this Court.