### State of Vermont v. Glenn Prior

[804 A.2d 770]

No. 00-441

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed May 24, 2002

*Dan M. Davis*, Windham County State's Attorney, and *Christopher C. Moll* and *Tracy Kelly Shriver*, Deputy State's Attorneys, Brattleboro, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Henry Hinton*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Johnson, J.** Defendant appeals from his conviction for aggravated domestic assault, simple domestic assault, disturbing the peace, and arson, following a jury trial. Defendant claims 1) that the court erred in denying his motion to dismiss in the interests of justice; 2) that the State presented insufficient evidence that a knife used during one of the assaults was a "deadly weapon"; and 3) that the court erred in admitting allegations of abusive behavior in an earlier marriage. We affirm.

These charges arise from a series of confrontations between defendant and his wife on and around February 21, 1998. The couple got into a verbal fight that day, which quickly escalated to physical confrontation, in which defendant punched his wife in the ribs. The next day, defendant threatened his wife with a knife while she was packing to leave with the couple's children. After she left to spend the night at a friend's house, defendant burned several of his wife's personal items in their front yard, and made a threatening telephone call to another person.

Defendant was initially tried on these charges in the fall of 1999, but the trial resulted in a hung jury. After a second trial in May 2000, defendant was convicted. At trial, the principal dispute was not whether defendant engaged in the alleged conduct, but whether he was criminally responsible for it, because defendant alleged that he was insane at the time, suffering from a brief psychotic disorder.

Defendant's first claim on appeal is that the court erred in failing to grant his motion to dismiss in the interests of justice pursuant to V.R.Cr.P. 48(b). Rule 48(b)(2) provides that the trial court may dismiss the indictment or information "[i]f the court concludes that such dismissal will serve the ends of justice and the effective administration of the court's business." The motion, filed after the mistrial, was accompanied by an affidavit of the wife stating that she supported dismissal because of the emotional and financial hardship a second trial would cause her and her family. The court denied the motion, holding that the reasons identified by defendant, namely the emotional and

financial toll that a second trial would impose, do not outweigh the public's interest in the proper resolution of the case by a jury. Defendant claims that this conclusion was in error because the court identified many factors that weighed in favor of granting the motion, and that it improperly relied on its concern for public appearances in denying the motion.

■ The proper inquiry for a motion brought under V.R.Cr.P. 48(b) was explained in *State v. Sauve*, 164 Vt. 134, 666 A.2d 1164 (1995). In that case, we identified a multi-factored analysis that courts should undertake to determine whether dismissal is appropriate. *Id.* at 140-41, 666 A.2d at 1168. These factors include the seriousness and circumstances of the charged offense; the extent of harm resulting from the offense; the length of any pretrial incarceration; the impact of dismissal on public confidence in the judicial system; and the attitude of the complainant or victim with respect to dismissal of the case. *Id.* The court's balancing of these factors is an exercise of its broad discretion. We will reverse a court for abuse of discretion only where the court has "entirely withheld its discretion or where the exercise of its discretion was for clearly untenable reasons or to an extent that is clearly untenable." *State v. Fitzpatrick*, 172 Vt. 111, 116, 772 A.2d 1093, 1097 (2001) (internal quotations omitted).

■ There is no abuse of discretion. The court's decision carefully considered all of the factors as they relate to this case. In support of his argument, defendant emphasizes that the victim, defendant's wife, opposed continuing the prosecution, and indeed, the trial court recognized this fact. That the court did not base its entire decision on that one factor, however, does not indicate an abuse of discretion — nor does the fact that the court did consider the public interest in resolving the case by a jury rather than a judge. Both of these factors are relevant to the court's determination. It is precisely because the court's decision requires balancing these factors, as well as others, that we defer to the trial court's sound exercise of its discretion. Here, the court carefully reviewed all the factors and arrived at a reasoned conclusion. The court did not err in denying the motion to dismiss.

Defendant next claims that the court erred in denying his motion for judgment of acquittal, pursuant to V.R.Cr.P. 29, on the basis that there was insufficient evidence that the knife used in the assault was a deadly weapon to support conviction for aggravated domestic assault. Defendant was charged with aggravated domestic assault, which is defined as one who "uses, attempts to use or is armed with a deadly

weapon and threatens to use the deadly weapon on a family or household member." 13 V.S.A. § 1043(a)(2). A "deadly weapon" is in turn defined as, "any firearm, or other weapon, device, instrument, material or substance, whether animate or inanimate which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury." *Id.* § 1021(3). Defendant's argument hinges on the fact that the knife itself was not entered in evidence, and that the State instead relied entirely on the victim's testimony to prove this element of the crime.

There is no error. Our inquiry on review of a V.R.Cr.P. 29 motion is "whether the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." *State v. Couture,* 169 Vt. 222, 226, 734 A.2d 524, 527 (1999) (internal quotations omitted). We need only recount the victim's testimony about the knife to rebut defendant's claim. At trial, the victim testified that defendant "out of the blue appeared with a knife." After the victim described the knife as a folding knife that she recognized from defendant's auto body shop, she testified that "he lifted it [the knife] up and put it by my neck . . . for like two seconds," then "he pulled it back and he said you've got to get the hell out of here or I'm going to kill you." This evidence was sufficient for a reasonable trier of fact to conclude that defendant assaulted his wife with a weapon "capable of producing death or serious bodily injury." 13 V.S.A. § 1021(3). See *State v. Sanders,* 168 Vt. 60, 61, 716 A.2d 11, 12 (1998) (affirming conviction for aggravated domestic assault where defendant brandished knife and threatened to kill girlfriend); see also *State v. Brown,* 646 N.E.2d 838, 842 (Ohio Ct. App. 1994) (holding that evidence was sufficient to sustain conviction for assault with a knife where defendant held knife to victim's neck and threatened her, but did not inflict physical harm with the knife); *Skinner v. State,* 33 P.3d 758, 768 (Wyo. 2001) (affirming conviction for aggravated domestic assault where defendant threatened to kill girlfriend while brandishing knife). Defendant's arguments that expert testimony and physical evidence are necessary to establish that the knife was a deadly weapon are unpersuasive.

Finally, defendant claims it was prejudicial error for the court to admit allegations of abusive behavior by defendant in a marriage that ended twenty years before the trial of this case, and that the error was exacerbated by the State's improper use of the evidence in closing argument.

The State first sought the introduction of evidence of similar violence in defendant's first marriage by a notice of intent to rely on evidence pursuant to V.R.E. 404(b). The evidence was to be offered through defendant's former wife, Karlene Karpinski, to prove intent and absence of mistake, and to rebut defendant's mental status defense. The court deferred ruling on the admissibility of that evidence until after the State rested. At that time, the court decided that evidence of violent acts by defendant in his first marriage was admissible, but through each side's expert on insanity.[1] The court reasoned that an insanity defense necessarily opened up some issues that might otherwise be excluded, including prior bad acts, as long as the evidence is relevant. Accord *United States v. Whitetail*, 956 F.2d 857, 863 (8th Cir. 1992) (evidence of prior bad acts admissible where murder defendant put her state of mind at issue as a defense). Because the domestic violence context was similar, the experts had been made aware of the allegations and each had considered them and dealt with them in their analyses, the court found there was probative value to allowing inquiry into the experts' knowledge of the facts and how they related to their diagnoses. The court further found that the probative value outweighed the prejudicial effect. We review the trial court's decision to admit evidence for abuse of discretion. *State v. Crannell*, 170 Vt. 387, 392, 750 A.2d 1002, 1008 (2000). There was no abuse of discretion.

Defendant claims first that it was unreasonable for Dr. Cotton, the State's psychiatrist, to rely on the allegations of misconduct in defendant's first marriage because it is not evidence reasonably relied upon by experts in the field, in violation of V.R.E. 703. Specifically, defendant contends that the incidents had no relation to Dr. Cotton's diagnosis of paranoid personality disorder, that the evidence was remote and of dubious validity, and did not come from defendant himself.

The evidence came in first through defendant's psychiatrist, Dr. Bursztajn, who concluded that defendant had suffered a brief psychotic episode that rendered him legally insane at the time of the crime. Dr. Bursztajn had considered the allegations of abuse by defendant's former wife, taking the allegations as true for the purpose of determining his diagnosis. But, Dr. Bursztajn refused to give them "undue weight" because of other allegations suggesting defendant's first marriage was marked by substance abuse and violence on both sides. Although defendant attempts to cast Dr. Bursztajn's testimonial reference to the prior bad acts as compelled by the court's ruling, it is

---

[1] The court deferred ruling on Karpinski's testimony until hearing from the experts, but subsequently refused to permit further testimony on the subject.

apparent from the testimony that consideration of the evidence, despite his ultimate rejection of it as significant, was important to his overall conclusion and part of the explanation of his opinion. See *Rogers v. United States*, 483 A.2d 277, 289 (D.C. 1984) (where defense was insanity, evidence of prior arrests admissible through expert witness to show basis for diagnosis and opinions).

In fact, although their conclusions differed, both Dr. Bursztajn and Dr. Cotton found defendant's life history, including the events of his first marriage, to be relevant information. Dr. Cotton concluded that defendant suffered from paranoid personality disorder, which is found in the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) at 637-38, a condition, in the opinion of Dr. Cotton, that defendant had been suffering from for over thirty years, encompassing the time of defendant's first marriage. Dr. Cotton testified that the previous incidents of violence were important to his assessment that defendant had not suffered a brief psychotic episode and to his ultimate conclusion that defendant was sufficiently in control of his behavior at the time of the domestic assault on his second wife to conform his conduct to the requirements of the law.

We had occasion to consider the admissibility of prior bad acts in the context of a psychiatrist's testimony in *State v. Percy*, 149 Vt. 623, 640-41, 548 A.2d 408, 418-19 (1988). In *Percy*, we recognized that when the defendant puts his sanity in issue, the inquiry " 'may take a very wide range .... Broadly speaking, his whole life may be canvassed for evidence bearing upon the question; and his ancestry and family history may be investigated.' " *Id.* at 640, 548 A.2d at 418 (quoting *State v. Warner*, 91 Vt. 391, 392, 101 A. 149, 150 (1917)). Evidence of a life history is not automatically excluded because it includes prior bad acts that might otherwise be excluded under V.R.E. 404(b), because 404(b) does not apply if the evidence is offered for a purpose other than to show defendant's character.[2] See *State v. Hurles*, 914 P.2d 1291, 1297 (Ariz. 1996) (when defense is insanity, the facts and circumstances surrounding all prior acts are relevant to "throw light one way or the other upon the issue of [defendant's] sanity") (internal quotations omitted); *Shepherd v. State*, 547 N.E.2d 839, 841 (Ind. 1989) ("Evidence which might otherwise be inadmissible

---

[2] In any event, V.R.E. 404(b)'s protections against the admission of character evidence to show that a defendant "acted in conformity therewith" are irrelevant where the defense is not contesting that alleged acts occurred, but instead is claiming that he is not criminally responsible for his behavior. See *Rogers*, 483 A.2d at 288.

becomes admissible when there is a question as to the accused's sanity."). Here, as in *Percy*, the prior acts evidence came in entirely through the examination of the two psychiatrists to show the basis and explanation of their opinions, and the court weighed the probative value versus the prejudicial effect. The evidence was relevant on the issue of sanity and used for a purpose other than one prohibited by V.R.E. 404(b). See *Percy*, 149 Vt. at 641, 548 A.2d at 418.

Defendant argues his case is different, however, because unlike the diagnosis of anti-social personality disorder in *Percy*, which required evidence of repeated unlawful acts to meet the diagnosis, Dr. Cotton's diagnosis of paranoid personality disorder included "no such diagnostic criterion." Despite the facts of *Percy*, there is no requirement in our rules that unlawful prior bad acts must be listed in the diagnostic criteria of a mental illness before evidence of them may be admitted in support of a doctor's opinion. The relevance of such acts is judged, rather, by whether the information is "of a type reasonably relied upon by experts in the particular field in forming opinions." V.R.E. 703; *Percy*, 149 Vt. at 641, 548 A.2d at 418. As Dr. Cotton explained in his testimony, a person's history and life experience, past behaviors, witness' statements, old medical records, school records and work records are all relevant when performing a forensic evaluation. Moreover, Dr. Cotton's diagnosis of paranoid personality disorder required him to find that defendant had a longstanding difficulty in coping with life. By necessity, then, Dr. Cotton's evaluation of information about defendant had to include more than a consideration of the most recent events in defendant's life, and he had to be able to explain the relevance of prior events to his conclusion on sanity. There was no violation of V.R.E. 703. See *State v. Odiaga*, 871 P.2d 801, 806 (Idaho 1994) (evidence of prior drug use admissible when evidence was part of the basis of psychiatrist's opinion on defendant's mental status); *State v. Slocumb*, 521 S.E.2d 507, 514 (S.C. Ct. App. 1999) (where defense was insanity, State could properly question defense psychiatric expert on defendant's previous mental health records where those records formed the basis of expert's opinion).

Lastly, defendant argues that the allegations of violence in the first marriage were not told to Dr. Cotton by him, but by others, and that the allegations were contested. Much of the volumes of information that Dr. Cotton reviewed, in addition to his examination of defendant, included information with which defendant would undoubtedly disagree or justify. It is well established, however, that an expert may

rely on hearsay evidence to form his opinion even if that hearsay is not independently admissible for its substance. V.R.E. 703; *Keus v. Brooks Drug, Inc.*, 163 Vt. 1, 4, 652 A.2d 475, 478 (1994). The major limitation on this rule is that the hearsay statements must be of a type reasonably relied on by experts in the particular field. *Id.* Defendant provides no support for his allegation that psychiatrists do not routinely use statements from a patient's acquaintances in forming their opinions. Indeed, the use of sources other than the patient is common. E.g., *Rogers*, 483 A.2d at 289 (expert psychiatrists "based their opinions on lengthy interviews with [defendant] and . . . as described by others in affidavits"). Defendant had the opportunity to cross-examine the State's expert and cast doubt on the relevance and accuracy of the information relied on by the psychiatrist. He also presented his own psychiatrist to discredit Dr. Cotton's opinion. To the extent that Dr. Cotton relied on evidence that occurred remotely in time or in a factually different setting, those "are all matters to be weighed by the jury." *Shepherd*, 547 N.E.2d at 841. Because there was no error in admitting the testimony, the prosecutor was entitled to refer to it in discussing Dr. Cotton's opinion in closing argument.

*Affirmed.*