## State of Vermont v. Vernon R. Dunbar

[566 A.2d 970]

No. 87-052

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed August 25, 1989

400

*Robert M. Butterfield*, Caledonia County Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*Martin and Paolini*, Barre, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals his conviction after a jury trial of sexual assault and lewd and lascivious conduct involving a child. We affirm.

The alleged assault occurred at defendant's house in the complainant's neighborhood. Another juvenile was alleged to be present, but did not witness the acts charged. The State's case relied heavily on the testimony of the complainant, and the major issues in the appeal concern that testimony.

The first information issued by the Caledonia County State's Attorney on May 10, 1986 charged defendant with both sexual assault (13 V.S.A. § 3252(3)) and lewd and lascivious conduct with a child (13 V.S.A. § 2602), each committed "[o]n or about July 1, 1985." Defendant filed a notice of alibi defense on September 29, 1986, and the next day the State amended the informations to change the date to "during the summer of 1985." Defendant's subsequent motion to dismiss for lack of specificity as to the date of offense was denied. Defendant then moved to dismiss both charges for lack of a prima facie case and to sever the two charges for trial. At the hearing on these motions, which the court eventually denied, the alleged juvenile victim was represented by the public defender, who participated in the hearing over defendant's objections. The defender also joined with the state's attorney in opposing defendant's motion for change of appointed counsel, which motion was denied.

The State gave formal notice that it intended to call a child psychologist, Dr. Donald J. Hunt, to testify with regards to the functioning of the mind of a five-year-old child, and how it differs in many respects from that of an adult or even an older child. The notice also advised that the prosecution would seek his testimony "concerning the behavior of children who are victims of sexual assault." Defendant sought discovery concerning the expert's treatment of the alleged victim, but Dr. Hunt invoked the therapist-patient privilege and the court refused to intervene, citing the limited nature of the prospective testimony of the expert. At trial defendant continued to object to the psychologist's expert testimony on grounds that he had not been given the opportunity to examine him on his treatment of the complainant and that the testimony had not been established as necessary. Defendant also objected to Dr. Hunt's later testimony concerning child abuse symptomatology.

Following conviction on both counts, defendant appeals on grounds, among others, that the prosecution was improperly allowed to amend the information to avoid his alibi defense, that he was denied information about the therapy relationship between the State's expert and the alleged victim, that the role of the public defender was improper, and that he was denied his constitutional right of confrontation.

## I.

Defendant first argues that the trial court erred in allowing the prosecution to amend its information three weeks before trial, changing the time of offense from "on or about July 1, 1985" to "during the summer of 1985." The amendment of the information followed by a day defendant's filing of his notice of alibi, purporting to establish his whereabouts away from the crime scene "on or about July 1." Defendant concedes that time is not of the essence in charges of sexual assault or lewd and lascivious conduct, *State v. Williams*, 137 Vt. 360, 362, 406 A.2d 375, 376 (1979), *cert. denied*, 444 U.S. 1048 (1980); *State v. Daniels*, 129 Vt. 143, 144, 274 A.2d 480, 480 (1971), but contends that allowing the amendment after he filed his notice of alibi subverts the requirement of reasonable particularity in criminal informations. But having conceded that the charges at bar do not require time to be of the essence, defendant limits his further argument to cases in which charges were not supported by indictments or informations containing sufficient particularity. *Wong Tai v. United States*, 273 U.S. 77, 81 (1927); *Commonwealth v. Devlin*, 460 Pa. 508, 516, 333 A.2d 888, 892 (1975); *People v. Britt*, 48 Misc. 2d 705, 709, 265 N.Y.S.2d 368, 370 (Nassau County Ct. 1965). He does not cite support for the proposition that the State was barred from "[changing] the accusation from one that the defendant was by alibi able to make intelligent preparation for, to one that denied the defendant that ability." The State's obligation ended when it advised defendant within reasonable limits under the totality of circumstances when the offense was alleged to have been committed. See *State v. Christman*, 135 Vt. 59, 60, 370 A.2d 624, 625 (1977); *Commonwealth v. Niemetz*, 282 Pa. Super. 431, 439, 422 A.2d 1369, 1373 (1980). There was extensive pretrial discovery, in which both the alleged victim and her mother were deposed, and the nature of the State's

case fully exposed, including the tender age of the complaining witness. Defendant could not have been unduly surprised by the amendment to the information and does not argue, except in conclusory terms, that preparation of his case was hampered, other than by the obvious loss of the alibi defense itself, in which he had no vested right.

## II.

Defendant next contends that the seating arrangement during trial prevented face-to-face confrontation with complainant, thereby violating his Sixth Amendment rights. See *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The State had moved before trial to allow the child to sit at floor level, facing the jury, and that two "support persons" be allowed to sit with her. Her guardian testified at the ensuing motion hearing that the arrangement was necessary in order to allow her to testify in the presence of strangers. A social worker acquainted with the juvenile witness also testified that accommodations were needed because the child's involvement in the case was stressful and frightening. The court ordered that the witness face the jury, not the defendant, but that she could be fully cross-examined by counsel. The State offers no different version of the seating arrangement but adds that defendant and the witness had a "somewhat obstructed view of one another" with defendant off to the side, but slightly in front of, the witness.

The United States Supreme Court recently underscored the broad sweep of Confrontation Clause rights in *Coy v. Iowa*, 487 U.S. 1012, 108 S. Ct. 2798 (1988), which reversed a sexual assault conviction after the state trial court ordered a screen between the two thirteen-year-old complaining witnesses and the defendant.

In overturning the conviction, the Court stated:

> The screen at issue was specifically designed to enable the complaining witnesses to avoid viewing appellant as they gave their testimony, and the record indicates that it was successful in this objective. It is difficult to imagine a more obvious or damaging violation of the defendant's right to a face-to-face encounter.

*Id.* at 1020, 108 S. Ct. at 2802 (record citation omitted). But the nub of the Court's reasoning was not a reading of the Sixth Amendment Confrontation Clause that admits of no exceptions. The Court stated:

> We leave for another day, however, the question whether any exceptions exist. Whatever they may be, they would surely be allowed only when necessary to further an important public policy. The State maintains that such necessity is established here by the statute, which creates a legislatively imposed presumption of trauma. Our cases suggest, however, that even as to exceptions from the normal implications of the Confrontation Clause, as opposed to its most literal application, something more than the type of generalized finding underlying such a statute is needed when the exception is not "firmly ... rooted in our jurisprudence." The exception created by the Iowa statute, which was passed in 1985, could hardly be viewed as firmly rooted. *Since there have been no individualized findings that these particular witnesses needed special protection, the judgment here could not be sustained by any conceivable exception.*

*Id.* at 1021, 108 S. Ct. at 2803 (emphasis added and citations omitted). In her concurring opinion, Justice O'Connor stressed the possibility of demonstrating an interest sufficient to outweigh the right of confrontation, based on a specific showing of need:

> I agree with the Court that more than the type of generalized legislative finding of necessity present here is required. But if a court makes a case-specific finding of necessity, as is required by a number of state statutes ... our cases suggest that the strictures of the Confrontation Clause may give way to the compelling state interest of protecting child witnesses.

*Id.* at 1025, 108 S. Ct. at 2805 (citations omitted). In the case at bar the particular need to protect the juvenile witness was fully established. The trial court conducted a hearing on the subject and allowed testimony in support of and against the special seating arrangement. Credible testimony suggested that the child, who had allegedly been told her parents would

be killed if she disclosed the events in question, would be unable to testify without some accommodation.[1] The very specificity, the absence of which was the basis for the holding in *Coy*, was present in the case at bar.

■ Moreover, the seating arrangement ordered by the trial court was far less damaging to defendant's confrontation right than the screen erected in the courtroom in *Coy*, which made it literally impossible for the complaining witness and defendant to have a face-to-face encounter. At most, the arrangement in this courtroom obstructed, but did not prevent, mutual viewing by defendant and complainant. No message was transmitted to the jury that defendant was a pariah whose isolation might be equated with guilt. In sum, the compromise reached by the court was a measured response to the requirements of a specific witness and offended no right of defendant to confront his accuser.

## III.

■ Defendant attacks the substance of Dr. Hunt's expert testimony about the cognitive development of five-year-olds and the profile of a sexually abused child, first arguing that under standards set forth in *State v. Catsam*, 148 Vt. 366, 368–72, 534 A.2d 184, 186–89 (1987), the need for the testimony had not been demonstrated on either subject. Defendant argues that while *Catsam* might countenance expert testimony to explain the flawed testimony of a young witness, the complainant's testimony at trial here was not flawed, and consequently the expert's testimony was both unnecessary and prejudicial. Reading *Catsam* to bar expert testimony about the unique psychological effects of sexual assault on children except where there is a prior demonstration that a particular juvenile's testimony fails a test of clarity or maturity would

---

[1] Defendant argues that V.R.E. 807 prescribes the sole procedure for excusing a witness from face-to-face confrontation, and that only in the event of a finding of "substantial risk of trauma to the child which would substantially impair the ability of the child to testify" is a court authorized to order that the testimony be taken by two-way closed circuit television or by recorded testimony. V.R.E. 807(b), (c). But such rules do not compel more drastic measures to be taken, where the less will suffice. Placing the juvenile witness where her eyes would not be directly fixed on defendant was an acceptable, less drastic alternative to the V.R.E. 807 procedure.

pose an insuperable barrier to expert testimony that is useful for any jury of nonexperts in considering the testimony of a very young witness.[2] As to Dr. Hunt's testimony about the profile of a sexually abused child, again no part of that testimony was addressed to the complainant as a witness before the jury. The testimony consisted of descriptions of the components of the behavioral characteristics, which, in general, lead to a diagnosis of sexual abuse.

■ Defendant next argues that Dr. Hunt's testimony endorsed complainant's credibility, the same grounds that were the basis of this Court's reversal in *Catsam*. While defendant's reasoning on this point is unclear, two key elements present in *Catsam* are clearly missing here. First, Dr. Hunt never testified about the psychological or medical status of the complainant and never ventured an opinion as to whether she suffered from post-traumatic stress disorder (PTSD). Second, and more crucial to our analysis, he never told the jury that PTSD sufferers tend to tell the truth. If defendant is making the broader argument that any expert witness produced by the prosecution regarding another State witness will have a general tendency to advance the State's case—and defendant has demonstrated little more in the present instance—the answer is that such evidence involves no reversible error. As we said in *State v. Hicks*, 148 Vt. 459, 462, 535 A.2d 776, 778 (1987) (quoting *Commonwealth v. Baldwin*, 348 Pa. Super. 368, 376–77, 502 A.2d 253, 257 (1985)):

> The expert did not testify on the complainant's credibility but addressed only the parameters of reporting, and whether it is common for child victims of sexual abuse to delay telling someone what occurred. "The fact that the jury, if it believes the expert's testimony, may draw inferences which would tend to bolster the victim's credibility does not make the evidence inadmissible....

---

[2] The State contends that the child witness's testimony was not lucid and complete and hence such witnesses in general were the proper subject of expert testimony. A review of the record tends to support the State's view that the child's testimony was qualitatively different from that of an adult, but we need not pass ultimate judgment on this question since the expert could properly talk about five-year-olds in general, irrespective of the quality of the testimony by a particular child witness.

[S]o long as the expert does not render an opinion on the accuracy of the victim's recitation of facts, his or her general testimony on the dynamics of sexual abuse does not prejudice the jury."

## IV.

Defendant's next claim of error is that his rights to due process, to confront witnesses, and to present a defense were each denied by the trial court's failure to order Dr. Hunt to testify at deposition and at trial as to his professional relationship with the juvenile complainant. Defendant had sought such discovery in order to determine how that relationship might affect Dr. Hunt's testimony at trial. However, Dr. Hunt invoked the psychoanalyst-patient privilege now governed by V.R.E. 503, thus closing off this information. At an ensuing status conference, defendant's attorney put the case for disclosure:

I therefore, think that we are prevented effectively from knowing what personal experience he brings with this individual into the courtroom by hiding behind the privilege, and I don't think that we can really cross-examine him effectively unless we have some idea of what his knowledge is, what he thinks about this individual, what he's learned through his therapeutic contacts with her.

The state's attorney supported Dr. Hunt's exercise of privilege, arguing that his testimony was going to be limited to general principles of psychology and behavior, thereby excluding from jury consideration the results of his personal experience with complainant. The court ruled that "[s]o long as the testimony is limited in the ways that we've been discussing, I think the fact that there has been a relation is irrelevant and I'm not going to require that either the privilege be waived or the witness not testify."

### Due Process

■ There can be no dispute that due process principles guarantee the right of a defendant to discover relevant evidence, whether favorable or harmful. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). The right is spelled out in V.R.Cr.P.

16(a), which describes a prosecutor's obligations.[3] See *State v. Percy*, 149 Vt. 623, 632, 548 A.2d 408, 413 (1988). V.R.Cr.P. 15 and 17(f) provide for depositions of witnesses for both the State and defendant. Moreover, as this Court has previously recognized, "[a]ssuming the defendant has a basis for the claim that the agency file contains material evidence, ... the Fourteenth Amendment requires the trial court to make an in camera inspection of the file to determine whether there is any evidence 'material' to the defense of the accused." *State v. Percy*, 149 Vt. at 634, 548 A.2d at 414 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987)). As in *Percy*, the State here distinguishes *Ritchie*, because no report concerning Dr. Hunt's treatment of the juvenile complainant was in possession of the State and because no showing had been made that the evidence was material, as required in *Ritchie*.

The State's reading of *Percy* is correct in general, but in *Percy* the treating psychotherapist whose report or testimony was sought had no visible connection to the prosecution case and the State could say without qualification that it had no control over the prospective witness. In the present case Dr. Hunt, who treated the complainant, was also the State's expert witness on the *general* subject of the cognitive qualities and characteristics of a five-year-old. The total absence of control found in *Percy* is not present in the case at bar. Should the witness, for example, have testified specifically about the complainant, using information and perceptions gained during therapy, it might have violated the principles of mutuality (from which the due process right arises in this context) for the court to allow that testimony and at the same time to

---

[3] V.R.Cr.P. 16(a)(2)(C) provides in relevant part:

    **(a) Prosecutor's Obligations.** ... [U]pon a plea of not guilty the prosecuting attorney shall upon request of the defendant made in writing or in open court at his appearance under Rule 5 or at any time thereafter

    . . . .

    (2) Disclose to defendant's attorney and permit him to inspect and copy or photograph within a reasonable time the following material or information within the prosecuting attorney's possession, custody, or control:

    . . . .

    (C) any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons; ....

sustain the State's position that the information sought in deposition about the expert's treatment of the complainant was beyond its control.

However, we fully agree with the State's contention that defendant failed to show how the discovery sought from Dr. Hunt was material, given the nature of his testimony at trial. Dr. Hunt did not testify specifically about the complainant, nor did he express his opinion about whether she exhibited symptoms consistent with a diagnosis of abuse. Moreover, we concur with the State that disclosing the relationship between Dr. Hunt and the alleged victim might have conveyed the very kind of impression of authority that defendant sought to obviate.

### Right of Confrontation

Defendant reiterates his due process argument in the context of his federally guaranteed right of confrontation, citing *Pointer v. Texas* and parallel case law in Vermont, *State v. Covell*, 146 Vt. 338, 342, 503 A.2d 542, 545 (1985). Defendant focuses especially on his right to demonstrate through cross-examination that Dr. Hunt's testimony may have been based on matters not in evidence, *Bliss v. Moore*, 112 Vt. 185, 189–90, 22 A.2d 315, 317 (1941), and biased in favor of the juvenile complainant. More specifically, defendant's claim of error is founded on the assertion that once having treated the alleged victim, Dr. Hunt could not then purport without bias to speak generally of the characteristics of children of the alleged victim's age.

The right to confrontation, however, is not unlimited. *State v. Raymond*, 148 Vt. 617, 620, 538 A.2d 164, 166 (1987). A trial judge retains a wide degree of discretion to impose reasonable limits on cross-examination when there is a risk of "'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). See V.R.E. 403. Since the testimony defense counsel sought to admit was of minimal relevance only and outweighed by the risk of prejudice and confusion, the trial judge was within his discretion in excluding the evidence. Moreover, the fact that Dr. Hunt and the juvenile complainant

had a professional relationship, does not, by itself, suggest bias. See *People v. Kronemyer*, 189 Cal. App. 3d 314, 342, 234 Cal. Rptr. 442, 460 (1987).

■ Upon reviewing the transcript, it is clear that Dr. Hunt's testimony was general in nature. Defendant was free to attack this testimony on cross-examination and to rebut it with opposing evidence.

### Right to Present a Defense

■ The third theory on which defendant claims error in the court's refusal to order the State to reveal information about the therapy relationship between the complainant and Dr. Hunt is that such denial limited his presentation of a defense. Citing *State v. Shaw*, 149 Vt. 275, 542 A.2d 1106 (1987), defendant claims that he was unable to explore the juvenile complainant's statements to her psychologist and therefore could not challenge her credibility. That claim was never asserted at trial, where the sole basis for the request was the need to cross-examine Dr. Hunt, not the alleged victim. Objection on one ground does not preserve the right to appeal on another ground. *State v. Bubar*, 146 Vt. 398, 400, 505 A.2d 1197, 1199 (1985).

### V.

■ Defendant next argues that the actions of the complaining witness's attorney[4] exceeded the permissible limits established for a private prosecutor under *State v. Gonyaw*, 146 Vt. 559, 563–64, 507 A.2d 944, 947 (1985). Specifically, the attorney was heard on the issues of joinder and severance, dismissal for lack of a prima facie case, seating arrangements, appointment of substitute counsel, and a continuance, and he strongly urged incarceration of defendant at sentencing. We recognized in *Gonyaw* that "the prosecution's interests may differ from those of the complainant." *Id.* at 563, 507 A.2d at 947 (citing *State v. Miskell*, 122 N.H. 842, 845, 451 A.2d 383, 385 (1982)). On the subject of the admissibility of evidence of past sexual conduct by the complainant with the defendant, we stated:

---

[4] The court appointed a public defender to represent the complainant.

■■■■■■■■■

> The victim should be permitted to participate in the determination of whether the probative value of such evidence outweighs its private character to protect unwarranted public exposure. The victim's involvement should be limited to this issue, and confined to protecting her against unnecessary embarrassment and harassment.

*Id.* at 563–64, 507 A.2d at 947. But it is clear in the context of that case that the limits thus imposed on the victim's involvement concerned the issue of evidence of past sexual conduct, and was not offered as the ultimate limit on a victim's participation in a criminal trial. Here, none of the activities of the child's attorney tended to unfairly slant the criminal proceeding against the defendant or usurp the prosecutorial role. Defendant has not shown how the attorney's presence or actions at the two sentencing hearings exceeded the role allotted to victims at such hearings under 13 V.S.A. § 7006.

## VI.

■■■■ Defendant next asserts that the testimony of complainant's cousin as to what complainant said after the alleged acts should have been barred as impermissible hearsay. In a bench conference prior to the testimony, the state's attorney said that his goal was to establish the date that the complainant first reported the assault and her fear of disclosing it, but not to elicit the name of the perpetrator. Defendant nevertheless objected on hearsay grounds, even on the limited basis sanctioned by the court, after which the following testimony was presented:

Q. ... The judge has ruled that you may not mention the names of any people at the Dunbar house. Okay?

A. Um-hum.

Q. So if you're going to mention anything that you were told about that place, just simply use the terms person, or a child or an adult, whatever it may be; all right?

A. Um-hum.

Q. You can mention [complainant's] name, but not anybody else's. Please go from there.

A. Well, I'll say what [complainant] told me. [Complainant] said "the fat man" sexually assaulted her.

Since defendant weighs about 400 pounds, he claims with good reason that the quoted testimony reasonably identified him, though the State had undertaken not to allow that identification. While this testimony may have constituted impermissible hearsay,[5] it does not warrant reversal. Complainant herself had testified to the same effect, and defendant had sought earlier to suggest that complainant's testimony was the product of preparation for trial rather than recollection. Though the State did not raise this ground for admissibility during the bench conference, defendant's attempt to establish improper influence by the prosecution might have provided the basis for admission under V.R.E. 801(d)(1)(B).[6] In any case the single statement, in light of the more detailed and complete statement of complainant, does not require reversal since any prejudice caused by it was minimal. *State v. Lupien*, 143 Vt. 378, 383, 466 A.2d 1172, 1175 (1983).

## VII.

■■■ Defendant cites as error the court's refusal to include in its instruction on the credibility of child witnesses the observation that such witnesses are "likely to be more suggestible than adults" and may not "have a full understanding of the serious consequences of the testimony they give or the charges they make." Instead, the court issued a broader,

---

[5] The State suggested two possible reasons for the trial court's allowance of the testimony: first, as a state-of-mind exception under V.R.E. 803(3), and second, as a nonhearsay statement under V.R.E. 801(c) designed to establish the date of the offense. On appeal the State raises only the latter exception and the additional argument that the testimony could have been admitted in any case as a prior consistent statement under V.R.E. 801(d)(1)(B), in anticipation of the defense argument that complainant could not distinguish defendant from others in the Dunbar residence at the time of the alleged events.

[6] Strictly speaking, this evidence rule does not provide for a hearsay exception, but rather defines hearsay to exclude statements by a witness when the declarant also testifies at the trial and is subject to cross-examination concerning the statement, and the statement is "consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."

more general instruction about the caution needed to evaluate child witnesses, but lacking any reference to suggestibility.[7] Defendant essentially argues that because it failed to itemize specific modes in which juvenile testimony may prove unreliable, the court's cautionary instruction fell short of the mark. On the contrary, the caution administered, though general, was thorough, and the court might well have considered that delving into suggestibility would not help the jury to evaluate the witness or understand the evidence, but instead intimate that the witness was unreliable.

## VIII.

Finally, defendant argues that the judge imposing sentence was unduly influenced by the statement of the complainant's attorney that it was proper for the court to consider the impact on the family, the community and on other cases of child molestation. *Booth v. Maryland*, 482 U.S. 496, 503–07 (1987) (emotional distress of victim's family not proper sentencing consideration in capital case). Defendant singles out the attorney's statement that:

> people who can premeditatively and coldheartedly use their influence as adults to plunder the bodies and lives of children have to be told that society will not tolerate that sort of conduct. Your honor, I think it's imperative

---

[7] The court instructed as follows:

Now there is no precise age which determines when a child is competent to testify. This depends on the capacity and intelligence of the child, his or her understanding of the difference between what is truthful and what is untruthful, and his or her appreciation of the duty to tell the truth.

So in evaluating the testimony of the two children you should consider their capacity to distinguish, first of all, truth from falsehood. And—as in the case of all other witnesses—you're the sole judge of the credibility of the two children. And you bring the same sorts of considerations to bear in making that determination.

You may consider not only the age of the children, but their demeanor on the stand, their manner of testifying, their capacity to observe the facts, their capacity to recall those facts, their ability to understand the questions that were asked of them and to answer those questions; whether they impressed you as having an accurate memory of what happened, and whether they impress you as being truthful. And you should give the testimony of the children—just like the testimony of the adults—as much weight as you think that testimony deserves.

to protect other children for this Court to issue a harsh sentence on Mr. Dunbar....

But there is nothing in the defender's statement, taken as a whole, to justify the inference that he unduly influenced the court in the sentencing process. His statement followed a much lengthier and no less ardent appeal by the state's attorney for a harsh sentence. Neither statement included unsubstantiated allegations, as was the case in *State v. Neale*, 145 Vt. 423, 436, 491 A.2d 1025, 1033 (1985), nor could the single defender be accorded the importance of the 572 people who signed twenty-two petitions in *State v. Rice*, 145 Vt. 25, 31–32, 483 A.2d 248, 252 (1984), where the court resentenced the defendant as a result of the "public clamor." *Booth v. Maryland* concerned a jury's consideration of evidence in deciding on capital punishment, and the *Booth* court was careful to circumscribe its holding by that unique consideration. 482 U.S. at 509. The defender's statement in the present case did not unduly influence the court's imposition of sentence.

*Affirmed.*