2006 VT 128

## State of Vermont v. Kim A. Willis

[915 A.2d 208]

No. 04-154

Present: **Dooley, Johnson, Skoglund and Burgess, JJ., and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed November 22, 2006

*William H. Sorrell,* Attorney General, and *David Tartter,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates,* Barre, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant Kim Willis appeals from his conviction, after a jury trial, of one count of sexual assault on a minor and two counts of lewd and lascivious conduct with a child. He argues that the trial court committed reversible error by: (1) admitting hearsay statements from one of the victims, Z.S., under Vermont Rule of Evidence 804a; (2) refusing to sever the lewd and lascivious count involving Z.S. from the counts involving another victim; (3) allowing the State to amend one of the counts during trial; and (4) denying his request to inquire into Z.S.'s sexual history. We affirm.

¶ 2. Defendant worked as a part-time care provider at the Vermont Crisis Intervention Network (VCIN) in Moretown, Vermont. In April 2001, he was charged with engaging in lewd and lascivious conduct with, and sexual assaulting, J.G., a developmentally disabled child receiving services from VCIN. Defendant was also charged with engaging in lewd and lascivious conduct with Z.S., another develop-

mentally disabled child under his supervision. Both children disclosed the abuse to others.

¶ 3. The State moved to admit the children's hearsay statements at trial pursuant to V.R.E. 804a. Rule 804a allows a witness to testify to hearsay statements made by a mentally retarded individual if the trial court finds that: (1) the statements are offered in a sexual abuse case where the mentally retarded person is the alleged victim; (2) the statements were not taken in preparation for a legal proceeding; (3) the individual is available to testify; and (4) the "time, content and circumstances of the statements provide substantial indicia of trustworthiness." V.R.E. 804a(a)(1)-(4). After a hearing, the trial court concluded that the requirements of the rule were satisfied and the statements were admissible at trial.

¶ 4. In reaching its conclusion, the court made the following findings. J.G. was born in April 1986. He has mild autism and pervasive development disorder, and he requires constant supervision except to sleep. J.G. lived with his grandmother and legal guardian until he was ten years old. He then moved into a developmental care home. Between mid-January 2001 and February 22, 2001, J.G. was staying at VCIN.

¶ 5. On February 16, 2001, J.G. disclosed to his community outreach specialist that he had watched a movie at VCIN that "showed men and women licking each others butts and penises and the girls' 'rogina.'" J.G. stated that he had "licked someone's penis and it was done to him." He said that he could not disclose who had done it "because this person would be mad." The specialist reported the incident to her supervisor, who arranged to have J.G. interviewed. Prior to the interview, J.G. made additional disclosures about the abuse to his grandmother, and to an employee of the Department for Children and Families (DCF). J.G. identified defendant as the perpetrator.

¶ 6. On February 21, 2001, J.G. was interviewed by a Vermont State Trooper and a DCF investigator. J.G. provided extensive detail about the abuse. He recounted watching a movie with defendant about "cuddling." He described "cuddling" as

> like men and boys, ah, like do like that licking and, ah tickling men's, I mean woman's and girl's butts and, and, ah, woman and girls, um, putting their mouths on men's virgins or their penises and, ah, and ah, woman and girls like to make strange

noises like oh that feels good, like crying and pouting and stuff, those kinds of noises . . . .

¶ 7. Before, during, and after watching the movie, J.G. explained that he and defendant "cuddled each other." He described this as "cuddled like, ah, he touched my penis and rubbed my butt and tickles, um, put my hand . . . and then I rubbed his butt and I touched his penis and then we took a shower." J.G. stated that defendant sucked and pulled his penis and then he did the same to defendant. J.G. said they "cuddled" until about 11 or 12 at night and then "early in the morning like about 5, 4:30, 4:30, 5, we got up and did it again and then we went back to bed and then it was 6:30, got up at 6:30 and then, ah, that was it." J.G. provided a graphic and detailed description of having anal and oral sex with defendant and vice versa.

¶ 8. J.G. stated that defendant told him that if they kept cuddling, defendant would buy him anything he wanted at the store. The next day, defendant had no money so defendant gave him some items from his house instead. Defendant told J.G. not to tell anyone about what had happened because "you and me would both get into big trouble."

¶ 9. In light of J.G.'s disclosures, State authorities scheduled an interview with Z.S., who similarly had unsupervised contact with defendant. Z.S. was born in August 1986. He had a history of developmental delay and neuromotor problems resulting in gross motor and fine motor and speech disabilities. He had a hearing loss of a moderate degree. His IQ was 46, which indicated a significant subaverage intellectual functioning. Z.S. had problems walking, he was unbalanced, he had speech problems, and he acted much younger than his chronological age. He lived with a trained care provider, and required twenty-four hour supervision.

¶ 10. Z.S. was interviewed by a State Trooper on February 22, 2001, the day after J.G.'s interview. Ms. Boardman, the DCF investigator, was also present, and she took notes. The purpose of the interview was to ask Z.S. if anyone had touched him inappropriately. The interview lasted about one-half hour as Z.S. did not want to answer questions. During the initial portion of the interview, before the tape-recorder was activated, Z.S. stated that defendant "touched my privates."

¶ 11. On the evening after the interview, during his bath time, Z.S. acted strangely and made odd comments to his respite care provider who had been looking after Z.S. for approximately two years. While getting ready for his bath, Z.S. asked if his testicles were going to fall off. During the bath, Z.S. was scrubbing his private parts very hard.

He began hitting his private parts and hollering "bad." Z.S. never exhibited such behavior before, nor had he previously made any such statements. The respite worker was aware that Z.S. had been interviewed by DCF that day, but he did not know the purpose of the interview nor the contents of any statements that Z.S. made.

¶ 12. The following morning, Z.S. was in the kitchen and tried to punch the respite worker between the legs. Z.S. had never done this before. Z.S. stated that defendant touched him there. The respite worker asked, "[Defendant] touches you there?" and Z.S. replied, "Yes." The respite worker asked when this happened, and Z.S. replied, "When I played my game." Z.S. stated that he had not told anyone because he did not want to get into trouble. He also stated that the incident happened because he was bad and it was his fault. The respite worker called the boy's residential care provider and advised him of Z.S.'s statements.

¶ 13. At the Rule 804a hearing, defendant argued that the children's statements should not be admitted, and he presented expert testimony to challenge the reliability of the disclosures. The court was not persuaded by the expert's testimony. Instead, based on the facts above and numerous additional findings, the court concluded that the children's statements were reliable and admissible. As to J.G., the court explained that he provided consistent detailed statements about the abuse, and his statements raised a strong suspicion that sexual acts occurred with defendant. The court concluded that the statements appeared trustworthy and they were not taken in preparation for legal proceedings.

¶ 14. The court found Z.S.'s hearsay statements similarly admissible. It explained that Z.S. made spontaneous disclosures to the respite worker, a trusted adult. Z.S. had never made such statements before, nor had he behaved in a similar fashion. The information that Z.S. provided to the respite worker, including his identification of defendant, was consistent with that provided to the trooper and DCF investigator. Thus, looking at the totality of the circumstances, the court found that the time, content, and circumstances of the statements demonstrated sufficient indicia of reliability, and Z.S.'s statements to the respite worker were not taken in preparation for legal proceedings.

¶ 15. The court reached a similar conclusion with respect to Z.S.'s statements to the trooper and DCF investigator. As to reliability, the court explained that, at the time of the interview, the interviewers

possessed no knowledge that Z.S. had been abused; he was interviewed only because of J.G.'s disclosures and the fact that he had had unsupervised contact with defendant. The court found that, although the suggested interview protocol was not followed initially because the tape recorder was not turned on, this fact alone did not render the statements untrustworthy. In a later part of the interview, which was recorded, the transcript reflected the interviewer's "recap" of the statements made in the nontaped portion of the interview. The court found the trooper's notes from the untaped interview consistent with what Z.S. said during the taped portion of the interview. The court also found that, although the trooper asked Z.S. a leading question — "whether any adult had ever touched his privates" — there was nothing in the question to suggest any particular person. Z.S.'s disclosure was also consistent with statements made to the respite worker. Finally, the court found that although Z.S. was not a "willing" interview participant, he twice described the same sexual activity with defendant. Thus, looking at the totality of the circumstances, the court concluded that the statements showed sufficient indicia of reliability.

¶ 16. In reaching its conclusion, the court considered the expert testimony offered by defendant, but determined that there had not been such significant breaches of interviewing protocol that the boys' statements should be deemed untrustworthy. The court found no coaching or suggestive questions so egregious as to compromise the result of the interview. It explained that any inconsistencies between the boys' deposition testimony and their hearsay statements were for the factfinder to resolve at trial.

¶ 17. The court also found that Z.S.'s statements were not taken in preparation for legal proceedings, reiterating that Z.S. was interviewed for the first time on the day after J.G.'s interview, and that Z.S. had not disclosed any abuse prior to the interview. Additionally, the court explained, Z.S. and J.G. did not know one another, and they had never been in the same placements at the same time. The court thus found all of the hearsay statements admissible under Rule 804a.

¶ 18. The State relied on the children's hearsay statements at trial, among other evidence. The children also testified and were subject to cross-examination. Defendant testified on his own behalf, asserting that the abuse did not occur. The jury found defendant guilty on all counts, and this appeal followed.

¶ 19. Defendant first argues that the trial court erred in admitting Z.S.'s hearsay statements to the trooper and DCF investigator

because they lacked substantial indicia of trustworthiness. In support of this assertion, defendant points to testimony by his expert witness that the questioning of Z.S. was improper and that Z.S.'s statements were insufficiently descriptive. Defendant asserts that all of the trooper's questions were leading and notes that the initial portion of the interview was not tape-recorded.

¶ 20. We reject these arguments, which are at odds with our standard of review. The trial court "has great discretion in admitting or excluding evidence under [Rule 804a], and we will not reverse such decisions unless there has been an abuse of discretion resulting in prejudice." *State v. Fisher*, 167 Vt. 36, 39, 702 A.2d 41, 43 (1997). As detailed above, the trial court made numerous findings to support its conclusion that Z.S.'s statements possessed sufficient indicia of reliability, and the findings are supported by credible evidence in the record. See *State v. Gallagher*, 150 Vt. 341, 348, 554 A.2d 221, 225 (1988) (Supreme Court will uphold trial court's finding that hearsay statements were trustworthy under Rule 804a(a)(4) if finding is supported by credible evidence in the record). We do not recount all of the court's findings here, but note that it found that Z.S. consistently described the abuse and consistently identified defendant as the perpetrator. Despite the defense expert's criticism that the investigators failed to follow best interview practices, the trial court was not persuaded, and concluded that there had not been such significant breaches of the interviewing protocol as to render Z.S.'s statements untrustworthy. It is not the role of this Court to reweigh the evidence or reassess the credibility of witnesses. See *State v. Tenney*, 143 Vt. 213, 216, 464 A.2d 747, 748 (1983) (where contradictory evidence is introduced, it is exclusive province of factfinder to resolve contradictions and decide whom to believe). We therefore reject defendant's first claim of error.

¶ 21. We similarly reject defendant's assertion, raised for the first time on appeal, that Z.S.'s statements to the trooper were taken in preparation for legal proceedings. Defendant maintains that Z.S.'s statements must have been taken in preparation for a legal proceeding because Z.S. no longer had any contact with defendant, and thus, the object of the interview could not have been to protect Z.S.

¶ 22. Even if defendant had preserved this argument, we would find it without merit. Contrary to defendant's suggestion, we have never held that a child must need protection from his victimizer

before this criterion can be satisfied. Cf. *Fisher*, 167 Vt. at 42, 702 A.2d at 45 (explaining that statements taken by DCF investigators are generally "not to make a case against the accused, but to ascertain the reliability of the accusations so the child can, if necessary, be protected"). Instead, to determine if a child's statements were taken in preparation for a legal proceeding, we look to the "totality of the circumstances to determine whether the interviews were primarily to investigate the allegations or primarily to prepare a legal action against the accused." *Id.* The "factual circumstances as interpreted by the trial court must govern," and we will not disturb the court's findings unless they are clearly erroneous. *State v. Blackburn*, 162 Vt. 21, 24, 643 A.2d 224, 226 (1993).

■ ¶ 23. The interview here was plainly investigatory. Z.S. had not disclosed any abuse before he was interviewed for the first time, nor did the investigators possess any knowledge that he had been abused. See *Fisher*, 167 Vt. at 42, 702 A.2d at 45 (holding that statements gathered during a child's initial interview with DCF and police, which was held within a week of the initial disclosure to DCF, were not taken in preparation for a legal proceeding); *Blackburn*, 162 Vt. at 25, 643 A.2d at 226 (concluding that statements derived from a child's fourth interview with DCF investigators and police, which was conducted at the police station and videotaped, were not taken in preparation for legal proceedings). There is no support for defendant's assertion that the interview was an attempt to preserve Z.S.'s statements for future legal proceedings. Cf. *Blackburn*, 162 Vt. at 25, 643 A.2d at 226 ("Where the child's testimony against a potential defendant is clear and consistent and further interviews simply repeat or preserve what has already been said, the only reasonable view may be that preparing legal proceedings was the primary focus."). Z.S.'s hearsay statements were properly admitted under Rule 804a.

¶ 24. Defendant next argues that the trial court erred by refusing to sever the lewd and lascivious conduct count involving Z.S. from the counts involving J.G. Defendant asserts that the charged offenses were not part of a "single scheme or plan" under Vermont Rule of Criminal Procedure 8(a)(2), and thus he was entitled to severance as a matter of right. Assuming that the counts were properly joined under Rule 8(a)(2), defendant maintains that severance was necessary to ensure that he received a fair determination of his guilt or innocence. According to defendant, he suffered prejudice from the counts being tried together because he would have been "less likely"

to testify in the case involving Z.S., and the evidence of other bad acts involving J.G. would have been inadmissible.

¶ 25. Defendant waived his claim of error by failing to renew his motion to sever at the close of the evidence. See V.R.Cr.P. 14(b)(4)(C) (defendant must renew pretrial motion to sever before or at the close of all of the evidence or the claim is waived); *State v. Venman*, 151 Vt. 561, 566, 564 A.2d 574, 578 (1989) (trial court has discretion in ruling on severance request, and motion must be renewed at close of evidence to allow trial court to "make this discretionary determination when the relevant facts are known"). He fails to show plain error. See *State v. Pelican*, 160 Vt. 536, 538, 632 A.2d 24, 26 (1993) ("Plain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights.") (citation omitted).

¶ 26. Pursuant to V.R.Cr.P. 8(a), two or more offenses may be joined for trial when the offenses: "(1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Where the offenses are joined solely because they are of the same or similar character, a defendant is entitled to severance as a matter of right. V.R.Cr.P. 14(b)(1)(A). When the offenses are joined because they form part of a single scheme or plan, however, there is no absolute right to severance. *Venman*, 151 Vt. at 565, 564 A.2d at 577-78. The defendant must instead show before trial that severance is appropriate or, at trial, necessary for "a fair determination" of his "guilt or innocence of each offense." V.R.Cr.P. 14(b)(1)(B).

¶ 27. In this case, the trial court determined that the charged offenses were not joined solely because they were of the same or similar character, but rather, because the acts formed part of a common scheme. The court explained that both boys were placed in defendant's care, both were disabled, both were the same age and sex, two of the counts alleged the same acts, and both boys were more vulnerable than other boys due to their disabilities. The court rejected defendant's claim that he would be prejudiced by having the counts tried together. It found defendant's assertion that he would be less apt to testify in the case involving Z.S. insufficient to show that

severance was "appropriate" for a fair determination of his "guilt or innocence of each offense." V.R.Cr.P. 14(b)(1)(B).

¶ 28. The court's conclusion that the charged offenses were part of a common scheme or plan is consistent with our case law. We addressed a similar situation in *State v. Johnson,* 158 Vt. 344, 612 A.2d 1114 (1992). In that case, the defendant, a camp counselor, was charged with seven counts of lewd or lascivious conduct with a child; the counts involved the defendant's conduct toward four different boys, each with mental disabilities, over a two-week period. *Id.* at 346, 612 A.2d at 1115. We rejected the defendant's argument that he was entitled to severance as a matter of right, finding that the charged acts were part of a common scheme or plan. *Id.* at 350-51, 612 A.2d at 1117-18. As we explained, in each of the seven counts the "defendant was accused of taking advantage of his position as camp counselor to sexually exploit young, male, mentally handicapped campers during a two-week camp session held in one location." *Id.* at 351, 612 A.2d at 1118. On these facts, we concluded that the offenses were not only the same or similar in character but they were also connected together or constituted parts of a single scheme or plan. See *id.* (recognizing that "[o]f course, in a given situation offenses may be of the same or similar character, and, at the same time, constitute a series of connected acts or parts of a single scheme").

¶ 29. We reached a similar conclusion in *State v. LaBounty,* where the defendant was charged with two counts of aggravated sexual assault, each involving a different victim. 168 Vt. 129, 131, 716 A.2d 1, 3 (1998). In that case, the alleged assaults occurred while the children were attending day care at the defendant's home. *Id.* at 131-32, 716 A.2d at 3-4. We concluded that, although the assaults were separated by a period of four to nine months, they evinced a common objective, plan, and method, and thus were properly joined for trial under V.R.Cr.P. 8(a)(2). *Id.* at 133, 716 A.2d at 4-5. As we explained, each of the assaults involved a young victim who attended the same day care center, each was made possible by defendant's exploiting his position of trust at the day care center, each occurred when defendant's wife was not present and when the defendant was assured of privacy, each was followed by a warning of the child not to tell, and each assault appeared to follow a similar pattern. *Id.* at 133, 716 A.2d at 5. In reaching our conclusion, we rejected the defendant's argument that the charged offenses could not have been part of a common scheme or plan because they were separated in time. *Id.* at 134, 716 A.2d at 5.

■ ¶ 30. We are faced with a similar situation here. The joined offenses involved allegations of similar conduct by defendant, the victims were mentally handicapped children staying at VCIN, both victims were the same age and sex, each offense was made possible by defendant's exploitation of his position of trust at VCIN, each incident occurred when defendant was assured of privacy, the incidents occurred in the same location, and the victims were particularly vulnerable due to their disabilities. As in the cases discussed above, the offenses here "were connected to each other in time and space, the profile of the victims, the relationship of the victims to defendant, and the opportunity presented to, and exploited by, defendant." *Johnson*, 158 Vt. at 351, 612 A.2d at 1118.

¶ 31. We reject defendant's assertion that because the offenses were somewhat separated in time they cannot be considered part of a common plan or scheme. We have recognized that there is "no hard-and-fast rule regarding time limits, and that the necessary proximity must vary with the circumstances." *LaBounty*, 168 Vt. at 134, 716 A.2d at 5 (citation omitted) (citing cases that involved a gap between offenses of seven months and one that concerned a series of sexual assaults against minors over a period of several years). Additionally, as we have noted, "a lapse of time between offenses may occur simply because a defendant has lacked the opportunity to put a plan into effect." *Id.* (citation omitted). Given the facts described above, we find no plain error in the court's conclusion that the offenses were part of a common plan or scheme.

■ ¶ 32. We thus turn to defendant's assertion that the court committed plain error in denying his request because severance was "necessary" to ensure that he received a fair determination of his guilt or innocence. See V.R.Cr.P. 14(b)(1)(B). We recognize that, when multiple offenses are joined for trial, potential prejudice may arise from: (1) a defendant's fear of testifying on his own behalf on one count because of the effect of such testimony on the other count; (2) the danger that proof of one count will have prejudicial effect on the other count as inadmissible evidence of another crime; and (3) the danger that the jury will cumulate the evidence of separate offenses against the defendant and conclude that he is a "bad man." Reporter's Notes, V.R.Cr.P. 14.

■ ¶ 33. A defendant is not entitled to severance, however, merely because he will suffer some prejudice from joinder. Rather, he must

provide the trial court with "substantial evidence of prejudice" to support his claim. *Venman*, 151 Vt. at 567, 564 A.2d at 579. As the United States Court of Appeals for the Second Circuit has explained in addressing analogous federal rules, "[g]ranting separate trials under Rule 14 simply on a showing of some adverse effect, particularly solely the adverse effect of being tried for two crimes rather than one, would reject the balance struck in Rule 8(a), since this type of 'prejudice' will exist in any Rule 8(a) case." *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (quotations omitted).

¶ 34. In this case, defendant's pretrial claim of prejudice — that he would be "less likely" to testify in the case involving Z.S. and "more likely" to testify in the case involving J.G. — is related to one of the purposes served by the severance rule. "Courts have recognized that prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence." *Id.* at 190-91 (quotations omitted). As one court has explained:

> [B]ecause of the unfavorable appearance of testifying on one charge while remaining silent on another, and the consequent pressure to testify as to all or none, the defendant may be confronted with a dilemma: whether, by remaining silent, to lose the benefit of vital testimony on one count, rather than risk the prejudice (as to either or both counts) that would result from testifying on the other.

*Baker v. United States*, 401 F.2d 958, 976 (D.C. Cir. 1968).

¶ 35. Nonetheless, "a mere unexplicated assertion of the desire to testify on only one count is not enough to require severance." *Sampson*, 385 F.3d at 191 (quotations omitted). Rather, a defendant must

> present enough information — regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other — to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying.

*Baker*, 401 F.2d at 977.

¶ 36. Defendant failed to make such a showing here. In its pretrial decision, the trial court found that defendant presented no

specific evidence that its refusal to sever the counts would necessarily chill defendant's right to remain silent or take the stand. As the court explained, defendant was presumed innocent and he had the right, regardless of the court's decision, to decide whether to testify at trial. See *Johnson*, 158 Vt. at 350, 612 A.2d at 1117 (recognizing that trial court has "considerable discretion" in deciding whether severance is necessary when counts are joined as part of a common plan or scheme).

¶ 37. By failing to renew his motion to sever at trial, defendant failed to make any showing that the prejudice he claimed before trial had actually come to pass. See Reporter's Notes, V.R.Cr.P. 14 (renewal of motion to sever is necessary "to show that the potential prejudice which [a defendant's] pre-trial motion claimed has actually occurred"); see also *Venman*, 151 Vt. at 566, 564 A.2d at 578. Renewal of a motion to sever is required because "the extent of the prejudice resulting from joinder may not be apparent until the trial unfolds." *Venman*, 151 Vt. at 567, 564 A.2d at 578 (citation omitted). Thus,

> it is appropriate for the defendant to renew the motion in order to alert the court of the necessity for reconsidering its original decision. By placing the burden upon the defendant to renew the motion, the standard permits the defendant to reevaluate the issue of prejudice and to elect to proceed with a consolidated trial despite the risk of prejudice. Therefore, failure to renew the motion constitutes a waiver of any right to severance.

*Id.* (citation omitted). In this case, as in *Venman*, 151 Vt. at 567, 564 A.2d at 579, defendant waived his right to severance by failing to renew his motion at trial, and he is therefore precluded from raising the trial court's denial of his motion as error on appeal.

¶ 38. Even assuming defendant preserved his claim, however, we would find it meritless. As reflected above, defendant merely stated before trial that he would be "more likely" to testify in the case involving J.G. and "less likely" to testify in the case involving Z.S. He reiterates this same claim on appeal, now asserting that the trial court's decision "directly affected how he conducted his defense." This statement is plainly insufficient to show substantial prejudice. See *United States v. Werner*, 620 F.2d 922, 930 (2d Cir. 1980)

(rejecting defendant's claim of prejudice based on assertion that, had his motion to sever been granted, he would have testified on one count and not the other, and stating that "[i]t is settled that a mere unexplicated assertion of this sort is not enough"). Defendant offered no specific explanation as to what his testimony would have been in the case involving J.G., nor did he explain why he could not give this testimony at a joint trial. See *id.* (basing conclusion on similar reasoning); *Baker*, 401 F.2d at 977 ("[N]o need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other."); see also *United States v. Jamar*, 561 F.2d 1103, 1108 n.9 (4th Cir. 1977) ("[A] particularized showing must be made concerning the testimony the defendant wishes to give and his reasons for remaining silent on the joined counts, so that the court can make an independent evaluation of whether the defendant will be prejudiced to an extent that outweighs the interest favoring joinder.").

¶ 39. Indeed, defendant's position in both cases was that the children were lying about being abused, and he testified to this effect at trial. His direct and cross-examination were unremarkable. He does not point to any damaging impeachment that occurred as the result of the counts being tried together, nor does he identify any specific testimony that he would have otherwise provided. We note, moreover, that as in *LaBounty* and *Johnson*, "[e]vidence relating to both offenses would have been admissible in separate trials to show a common scheme or plan under V.R.E. 404(b)." *LaBounty*, 168 Vt. at 135, 716 A.2d at 6; see also *Johnson*, 158 Vt. at 352, 612 A.2d at 1119 (stating that "the common features of defendant's conduct, the settings, and the victims, would have permitted admission of the evidence under 404(b)"). Thus, defendant fails to show how he suffered any prejudice, let alone substantial prejudice, from having the counts tried together, and we find no plain error in the trial court's denial of his motion to sever.

¶ 40. Defendant next asserts that the State should not have been allowed to amend the information on the lewd and lascivious conduct count involving Z.S. during trial. The original information alleged that during the summer of 2000 defendant fondled Z.S.'s penis in violation of 13 V.S.A. § 2602. The allegation was based on Z.S.'s initial statements that defendant had touched his "front privates" and the abuse occurred during the previous summer while Z.S. was playing a video game at defendant's house. At his September 2002 deposition,

which took place one year before trial, Z.S. testified, instead, that defendant touched him during the course of a shower while Z.S. was staying at VCIN. Z.S. stayed at VCIN in March 2000.

¶ 41. Approximately one week before trial, on September 17, 2003, the State moved to amend the information on all three counts. As to the count involving Z.S., the State sought to amend the time frame from "during the summer of 2000" to "during the spring and/or summer of 2000." The State asserted that the amendment would not prejudice defendant. It explained that the changes were for small increments of time, defendant had not given notice of an alibi defense, and the changes simply expanded the time to cover those periods during which defendant had access to the alleged victims.

¶ 42. Two days later, on September 19, the court denied the motion with respect to the count involving Z.S. with leave to renew the motion in the future or during trial. The court expressed its concern that there had not been any discovery for the time period prior to summer 2000; specifically, it was concerned about the VCIN activity logs for Z.S.'s stay in March 2000. The State indicated that it was trying to get the logs, and the record indicates that the State received the logs and delivered them to defendant on September 19. The State agreed, in connection with a motion filed by defendant to limit the State's examination of Z.S., to avoid references to Z.S.'s stay at VCIN when initially questioning Z.S.

¶ 43. At trial, the State asked Z.S. if defendant had ever done anything that Z.S. did not like. Z.S. said, "yes," and he stated, consistent with his deposition testimony, that the abuse occurred "at crisis house." Z.S. explained that defendant walked into the bathroom when he was taking a shower, which Z.S. did not like. The State then asked if defendant did anything that Z.S. did not like while they were at defendant's house, and Z.S. replied, "Not at his house. . . . It was at crisis house, not at his house." Z.S. then stated that defendant touched him in his private areas during the course of a shower at VCIN. He testified that he thought there was snow on the ground when the incident occurred.

¶ 44. Defense counsel cross-examined Z.S. and asked him about his deposition testimony. A portion of the deposition testimony was also played for the jury. On the tape, Z.S. stated that the incident occurred at VCIN during a shower and it happened in the spring. Z.S. reiterated these statements on cross-examination.

¶ 45. Following Z.S.'s testimony, the State again moved to amend the information to cover "spring or summer 2000." The State asserted that defendant had been aware of Z.S.'s deposition testimony for almost one year. Defendant also knew that Z.S. was staying at VCIN in March 2000, and that defendant supervised him at that time. The State also noted that it had provided defendant with Z.S.'s VCIN activity logs. The State argued that, given Z.S.'s trial testimony, there was enough evidence for the jury to find that defendant touched him in the spring of 2000 at VCIN.

¶ 46. After an off-the-record discussion, the trial court allowed the amendment, concluding that it was not unduly prejudicial because the issue had been apparent since Z.S.'s deposition almost one year earlier. The court noted that it had initially denied the request because, at that time, it was advised that no discovery had been done or provided to defendant for the spring 2000 period. The State subsequently provided defendant with the VCIN logs covering Z.S.'s ten-day stay at VCIN, which consisted of approximately twenty pages, with one entry by the staff member on that day's shift. Moreover, the court explained, the issue of Z.S.'s inconsistent statements was clearly in front of the jury and it would be in front of the jury regardless of its decision. The court found that Z.S. testified at trial consistently with his deposition testimony, and the State was entitled to amend the information to be consistent with that testimony. The court found it of little moment that the State moved to amend shortly before trial, noting that the State acted within the deadline to file pretrial motions. It explained that the State had afforded the defense leeway in light of the last-minute nature of trial preparation, and it found that the State was entitled to similar treatment. The court therefore granted the State's motion to amend the information to read "spring-summer of 2000."

¶ 47. Defendant argues on appeal that the court erred in allowing the amendment because it "completely changed the crime" and prevented him from being able to intelligently prepare a defense. He maintains that during discovery his attorney did not review any records concerning Z.S.'s stay at VCIN during the spring of 2000 because they were irrelevant to the crime charged. He also argues that amending the count had a prejudicial impact on the charges involving J.G. because the amendment made the crimes appear more similar.

¶ 48. We find no error. Pursuant to V.R.Cr.P. 7(d), the trial court may permit an amendment during trial to cure, among other things,

"misstatement of the time or date of an offense if not an essential element of the offense," as long as "no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Rule 7(d), like the general rule that the allegations in the information and the proof must conform,

> is based on the firmly established requirements: (1) that the accused shall be informed of the charge with such particularity that he will be able to prepare his defense intelligently, and will not be taken by surprise by the evidence adduced at trial; and (2) that he may be protected from a subsequent prosecution for the same offense.

*State v. Burclaff*, 138 Vt. 461, 464, 418 A.2d 38, 40 (1980) (citations omitted). Defendant fails to establish that his substantial rights were prejudiced by the amendment at issue here.

¶ 49. Contrary to defendant's suggestion, the amendment did not "completely change the charged crime." As an initial matter, we note that "time is not an essential element" of the crimes at issue here. *State v. Ross*, 152 Vt. 462, 465, 568 A.2d 335, 337 (1989); see also *State v. Dunbar*, 152 Vt. 399, 403, 566 A.2d 970, 972 (1989) ("time is not of the essence in charges of sexual assault or lewd and lascivious conduct"). More significantly, as the trial court found, defendant was aware one year before trial of Z.S.'s testimony that the incident occurred at VCIN during the spring of 2000, rather than at defendant's house in the summertime.

¶ 50. We addressed a similar situation in *Dunbar*. In that case, the defendant argued that the trial court erred by allowing the State to amend its information shortly before trial, changing the time of offense from "on or about July 1, 1985," to "during the summer of 1985." 152 Vt. at 403, 566 A.2d at 972. The amendment followed the defendant's filing of a notice of alibi for "on or about July 1." While the defendant conceded that time was not of the essence in charges of sexual assault or lewd and lascivious conduct, he argued that allowing the amendment after he filed his notice of alibi subverted the requirement of reasonable particularity in criminal informations. *Id.*

¶ 51. We rejected this argument, explaining that the State's obligation to the defendant ended when it advised him within reasonable limits under the totality of circumstances when the offense was alleged to have been committed. *Id.* at 403, 566 A.2d at 973. We explained that there had been extensive pretrial discovery, in which

the alleged victim was deposed, and the nature of the State's case fully exposed. We concluded that the defendant could not have been unduly surprised by the amendment to the information and he did not argue, except in conclusory terms, that preparation of his case was hampered, other than by the obvious loss of the alibi defense itself, in which he had no vested right. *Id.* at 403-04, 566 A.2d at 973.

¶ 52. Like the defendant in *Dunbar*, defendant here was plainly on notice of the nature of the allegations against him, and the State's case against him was fully exposed. Defendant had ample opportunity to discover any information brought into question by Z.S.'s deposition testimony. In fact, the record reflects that defendant was provided with the VCIN logs before trial. Defendant does not identify any specific evidence that he could have brought forward had the information been amended earlier. Moreover, the record shows that defendant testified in great detail about his interaction with Z.S. at VCIN. Defendant fails to show that the amendment hampered his ability to present his defense. We also reject defendant's claim that he was prejudiced because the amendment made the charges against him appear more similar. As the State notes, defendant is not entitled to "factually disparate" charges. Defendant fails to substantiate his claims of prejudice, and we therefore reject this claim of error.

¶ 53. We turn last to defendant's assertion that the trial court erred in denying his request to inquire into Z.S.'s sexual history during trial. The record indicates that defendant moved to allow such questioning on the third day of trial. Defendant asserted that he was entitled to rebut the State's suggestion, ostensibly made in its opening argument, that Z.S. "had no previous history of sexual abuse." Defendant maintained that there was a possibility that Z.S. had been abused in the past based on the deposition testimony of Z.S.'s caretaker. Defendant requested permission to question Trooper Brown and Z.S.'s caretaker about this possibility, and he sought to argue that Z.S. acted out with his respite care provider because the DCF interview caused memories of past abuse to resurface.

¶ 54. The trial court denied defendant's request. It explained that there was no definite evidence that Z.S. had been abused in the past, and it noted that if any evidence did exist on this issue, it would not be in the State's possession, but rather in the possession of DCF and subject to confidentiality requirements. The court also noted that defendant had been aware of this issue during discovery and he had not pursued it at that time.

¶ 55. Even assuming that such evidence existed, the court explained, it was inadmissible because it did not fall within any of the exceptions set forth in the rape shield statute, 13 V.S.A. § 3255. Moreover, even if the evidence were admissible under § 3255, the court explained, it would then need to determine under § 3255(a)(3) that the evidence bore on Z.S.'s credibility or was material to a fact at issue, and that its probative value outweighed its private character. The court found that, in this case, there had been no evidence or argument that Z.S. had any source of prior knowledge about sexual matters, that he had a prior sexual injury, or that there had been prior false allegations of sexual abuse. The court found no support for defendant's assertion that the State had suggested in its opening argument that Z.S. was "sexually innocent," or that the State had intentionally tried to mislead the court, parties, or the jury about the evidence or the State's theory of the case.

¶ 56. The court explained that the parties were now three days into trial, and looking at the balancing, whatever evidence there might be on this issue was speculative, unknown, and confusing. It concluded that to allow this line of questioning based on one fairly ambiguous statement in the State's opening would go beyond what was needed in the case, and it would be confusing and an exorbitant waste of time. The court therefore denied the motion.

¶ 57. Defendant argues that the court erred in denying his request. He does not assert that any evidence of prior abuse was admissible under the rape shield statute but rather argues that the evidence should have been admitted despite this statute because it was relevant and probative. According to defendant, he was entitled to raise this issue to challenge the State's case, and by denying his request, the trial court denied him his ability to confront the witnesses against him and prepare a defense. Defendant maintains that had he been able to make this argument, the jury would have had reason to doubt the State's case, and he would have been acquitted.

¶ 58. We find no abuse of discretion. See *State v. Lund*, 164 Vt. 70, 72, 664 A.2d 253, 255 (1995) ("The trial court has discretion in determining whether evidence is relevant and admissible."). As reflected above, the trial court identified numerous compelling grounds for rejecting defendant's proposed inquiry, including that there was no specific evidence that Z.S. had been previously abused, defendant failed to pursue this issue during discovery, and any

inquiry on this topic would be confusing to the jury and a waste of time. The court's decision in no way denied defendant his ability to confront the witnesses against him, nor did it hamper defendant's ability to prepare a defense. See *id.* ("[I]f the evidence is not relevant or unduly prejudicial, it is inadmissible and the Confrontation Clause may not be invoked to change that result."). The evidence was speculative and irrelevant, and the court did not abuse its discretion in excluding it. See *id.* at 72-73, 664 A.2d at 255 (reaching similar conclusion where defendant's proposed cross-examination of young victim about a prior sexual assault would have had little, if any, probative value while causing great trauma to young victim and creating risk of confusing the issues for the jury).

*Affirmed.*